**R. L. FOREE et al., Petitioners,**

**v.**

**CROWN CENTRAL PETROLEUM CORPO-
RATION et al., Respondents.**

No. B–460.

Supreme Court of Texas.

June 19, 1968.

damages for unjust discrimination in the purchase of crude oil, the trial court granted respondents' motion for summary judgment and rendered judgment that plaintiffs take nothing. The court of civil appeals affirmed. 417 S.W.2d 499. We reverse the judgments of both courts and remand the cause to the trial court.

The instant case represents one phase of rather lengthy litigation growing out of a complaint filed with the Railroad Commission of Texas by B. A. Duffy charging that respondents, who are common carrier-common purchasers of crude oil as defined by Art. 6049a, Vernon's Tex.Civ. Stats., were discriminating against complainant in the purchase of crude oil. The Commission, after hearing, entered its order on February 21, 1962 directing respondents to extend their pipeline transportation system and to make connection with Duffy's tank batteries. Respondents appealed by filing suit in the 126th District Court of Travis County to set aside the order. The Attorney General answered for the Commission and was joined in his defense of the validity of the order by certain intervenors, including some of the petitioners in the case before us.

A short time after respondents filed their suit, the Attorney General filed a separate suit against respondents in the 53rd District Court of Travis County in which he sought to recover statutory penalties of from $100 to $1000 for each day of discriminatory practices and for a mandatory injunction directing respondents to comply with the Commission's order. Some of our petitioners intervened in this suit and sought an award of one-half of any penalties recovered by the Attorney General and a recovery of actual damages. Respondents filed a plea of privilege to the phase of the suit which sought a recovery of damages and the trial court granted the plea and ordered that phase of the suit transferred to Harris County. The court of civil appeals affirmed. Duffy v. Crown Central Petroleum Corp., 366 S.W.2d 956 (Tex.Civ.App.—Austin 1963, no writ).

Billy E. Lee, Houston, H. Clayton May, Dallas, James N. Ludlum and James N. Ludlum, Jr., John Davenport, Austin, for petitioner.

Vinson, Elkins, Weems & Searls, W. H. Drushel, Jr., Houston, Cable & McDaniel, John S. McDaniel, Baltimore, Md., for appellee.

CALVERT, Chief Justice.

In this suit by petitioners, as plaintiffs, against respondents, as defendants, for

Respondents filed a motion for summary judgment with respect to the phase of the suit in the 53rd District Court of Travis County in which penalties and mandatory injunctive relief were sought. The trial court granted the motion and rendered judgment that the plaintiff and intervenors take nothing, but provided that the judgment should not be a bar to their right to re-file if the Commission's order then under attack in the 126th Court should finally be adjudged a valid order. The court of civil appeals affirmed. State of Texas v. Crown Central Petroleum Corp., 369 S.W. 2d 458 (Tex.Civ.App.—Austin 1963). We refused writ of error, no reversible error.

After petitioners' suit for damages was transferred to Harris County, the Railroad Commission entered an order on August 21, 1964 withdrawing its former order of February 21, 1962. The withdrawal order was entered upon a finding that Service Pipe Line Company had made a proposal, at the request of respondents, to extend its facilities and connect to the tank batteries of the parties in whose favor the original order was entered. The withdrawal order recited that the purpose of the order of February 21, 1962 had been accomplished and that the matter of extension and connection as theretofore ordered "now presents only a moot question." Service Pipe Line Company made the connection on November 1, 1964. Thereafter, respondents' suit in the 126th District Court of Travis County challenging validity of the Commission's original order was dismissed.

Following dismissal of the suit in the 126th District Court of Travis County, respondents, on June 14, 1966, filed their motion for summary judgment in this case in the district court of Harris County. In their amended petition in the suit, plaintiffs, petitioners here, alleged that they were the owners of interests in various producing leases in Haskell County Regular Field, and that Crown Central Petroleum Corporation was a producer and purchaser of crude oil in the Haskell County Regular Field and in the adjoining Sojourn-er Sand Unit Field in Haskell County. They further alleged that Crown Central was a common purchaser as defined by Art. 6049a and in its purchase of crude oil had discriminated against the plaintiffs in favor of its own production from October 15, 1959 to November 1, 1964. They sought damages of $85,998 measured by transportation charges of 11 cents per barrel for trucking their oil to Crown Central's Teague Receiving Station. Crown Central Pipe Line Company was alleged to be a common carrier of oil produced in Haskell County and a wholly owned subsidiary of Crown Central Pipe Line and Transportation Company which, in turn, was a wholly owned subsidiary of Crown Central Petroleum Corporation.

Damages were sought by the plaintiffs under authority of Sec. 11c, Art. 6049a, which reads:

"When any person, persons, association or corporation is discriminated against by a common purchaser as defined herein in favor of the production of said common purchaser, a cause of action for damages, when such has occurred, shall lie against said common purchaser and said person, persons, association or corporation may bring suit for same in any court of competent jurisdiction in the county in which the damage occurred."

■ The trial court's take-nothing judgment was affirmed by the court of civil appeals on the ground that primary jurisdiction to determine the issue of discrimination was conferred upon the Railroad Commission by Art. 6049a, and that in the absence of a final order of the Commission determining that issue the suit for damages could not be maintained. If a final order of the Commission determining the issue of discrimination is prerequisite to the right to maintain all suits for damages for discrimination under Sec. 11c, Art. 6049a, and if no such order exists, the judgments of the courts below should be affirmed. We hold that such an order is not prerequisite

to the right to maintain all statutory suits for damages.

The question of whether a Railroad Commission order finding discrimination is prerequisite to a suit for damages as authorized by Sec. 11c, Art. 6049a, has not heretofore been squarely presented to or directly decided by the appellate courts of this state. In support of its decision of the question, the court of civil appeals in this case cited Deep South Oil Co. of Texas v. Texas Gas Corp., 328 S.W.2d 897 (Tex. Civ.App.—Beaumont 1959, writ ref., n.r.e.) and State v. Crown Central Petroleum Corp., 369 S.W.2d 458 (Tex.Civ.App.— Austin 1963, writ ref. n.r.e.). Respondents cite the same cases.

In *Deep South*, Texas Gas Corporation, a common purchaser of gas, sought a declaratory judgment as to its obligations under a contract to purchase gas from Deep South. By cross-action, Deep South sought cancellation of the contract for fraud and because of discrimination against it in the taking of gas, and because of the discrimination sought damages after the date of cancellation. The court of civil appeals, in discussing the right of Deep South to recover damages because of discrimination, held, broadly, that Art. 6049a and related statutes required that the issue of discrimination be first submitted to the Railroad Commission. 328 S.W.2d 897, at 907–908. Considered in the factual context of the case, the holding, although apparently a dictum, has no application to the facts of this case. Immediately before making the quoted holding, the court pointed out that the discrimination, if any, against Deep South was not the type of discrimination for which Secs. 11c and 11e, Art. 6049a, expressly conferred a right to sue for damages.

State v. Crown Central Petroleum Corp., as heretofore noted, was another phase of the litigation between the parties to this appeal and involved the right of the Attorney General to sue for and recover statutory penalties, to be shared with intervenors, and his right to obtain a mandatory injunction requiring Crown Central to extend its pipeline and connect with Duffy's tank batteries. The summary take-nothing judgment was rendered by the trial court and was affirmed by the court of civil appeals on grounds that (1) no cause of action for penalties and mandamus existed independently of the Commission's order, because the Commission had exclusive primary jurisdiction to determine the issue of discrimination; and (2) no cause of action for penalties and mandamus for refusal to comply with the Commission's order existed, because Crown Central had a right to appeal from the order without being subjected to the heavy penalties and mandamus. 369 S.W.2d 458, at 462–463. Justice Hughes dissented. 369 S.W.2d 955.

From a careful re-examination of the record in State v. Crown Central, we are now convinced that the judgment rendered in that case was erroneous. In no event should a take-nothing judgment have been entered. The reasons for our present conclusion concerning the judgment in State v. Crown Central will be manifest from our discussion of the right of petitioners to maintain their suit for damages.

We find no express provision in Art. 6049a or related statutes which denies to a complainant his statutory right to prosecute a suit for damages in the absence of a final and subsisting Commission order finding discrimination. Indeed, the plain wording of Sec. 11c, Art. 6049a, seems clearly to authorize such a suit without regard to Commission action. If, therefore, an order of the Commission finding discrimination is prerequisite to the right to sue for and recover damages, it must be made so by the judicially created doctrine of "primary jurisdiction". According to one writer, "Questions of primary jurisdiction arise only when the statutory arrangements are such that administrative and judicial jurisdiction are concurrent for the initial decision of some questions". Davis, Administrative Law Doctrines, 28 Tex.L.R. 376 (1950), at 400. That is the situation here.

■ The statutes confer no jurisdiction upon the Railroad Commission to award damages or statutory penalties; liability for these exactions is to be determined exclusively by the courts. On the other hand, the courts are not vested with original jurisdiction to order that common carrier pipelines be extended and connected to particular wells; that jurisdiction is confided to the Commission by Secs. 7, 8b and 11d, Art. 6049a, upon findings that the extension is "reasonable and required in the public interest and that the expense involved will not impair the ability of such common carrier * * * to perform its duty to the public". In both forums, a preliminary finding of discrimination is prerequisite to the granting of relief. Jurisdiction of the courts and the Commission is thus concurrent on the issue of discrimination. In such situations, the general rule, as stated by Davis in Administrative Law Text, Sec. 19.07 (Hornbook Series 1950), at 352, is as follows:

"The theory seems reasonably clear that the test for applying the principle of primary jurisdiction is not whether some parts of the case are within the exclusive jurisdiction of the courts but whether some parts of the case are within the exclusive jurisdiction of the agency. Because the purpose of the doctrine is to assure that the agency will not be bypassed on what is especially committed to it, and because resort to the courts is still open after the agency has acted, the doctrine applies even if the agency has no jurisdiction to grant the relief sought. Thus, the doctrine was applied in Thompson v. Texas, Mexican Railway [328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946)], even though the suit was for damages and even though the ICC could not award damages. When an agency cannot grant the relief sought, the court may stay the judicial proceeding pending the administrative determination; this is what was done in the Tex-Mex case."

There are exceptions to the general rule.

We had occasion in Gregg v. Delhi-Taylor Oil Corp., 162 Tex. 26, 344 S.W.2d 411 (1961), to review the problem of primary jurisdiction of administrative agencies in considerable depth. In that case, we held that although clothed with extensive powers to make rules and regulations to prevent waste of oil and gas and to protect correlative rights of owners of interests therein, the Railroad Commission did not have primary jurisdiction to prevent a trespass by one operator upon the property of another. The rationale of our holding that the courts had original jurisdiction to ascertain whether a trespass was being committed and to enjoin it was that the questions presented were "primarily judicial in nature". We said: "Where the issue is one inherently judicial in nature (as we think the question of trespass is), the courts are not ousted from jurisdiction unless the Legislature, by a valid statute, has explicitly granted exclusive jurisdiction to the administrative body". By enunciating that particular exception to the primary jurisdiction rule, we did not mean to hold, and did not hold, that there could be no other exceptions.

■ The cause of action for damages in the instant case illustrates another necessary exception to the general rule, to wit: when the administrative agency is powerless to grant the relief sought and has no authority to make incidental findings which are essential to the granting of the relief. We have purposely stated the exception narrowly because we do not have before us a case in which the administrative agency is powerless to grant the relief sought, but *does* have authority to make incidental findings which are essential to the granting of the relief. The effect incidental findings, in the latter situation, should have on judicial action in granting or denying relief which only the courts can give need not be decided. We will save the problem for another case and another day.

■ Art. 6049a and related conservation statutes confer broad powers upon the Railroad Commission to hold hearings,

make findings, promulgate rules and regulations and enter orders to prevent or to terminate discriminatory practices by common carriers and common purchasers of oil and gas. In none of the statutes, however, do we find authority for the Commission to hold hearings and make findings of discrimination except as incidental to the power to take official action, i.e., to promulgate rules and regulations or to enter and issue orders. In other words, no authority is conferred upon the Commission to make findings of discrimination in a vacuum or as a mere agent of a trial court. It follows, therefore, that the Commission does not have authority, and cannot have exclusive primary jurisdiction, to make findings of discrimination in a particular case when the alleged discrimination no longer exists and official action by the Commission is thereby mooted. That is the situation here.

■ The Legislature did not condition the right to damages or penalties upon a final, valid and subsisting Commission finding of discrimination. Conceivably, a course of gross discrimination continuing over a period of months of negotiation could be halted abruptly upon threat of complaint to the Commission; or, it could be terminated during a Commission hearing. In either event, authority of the Commission to enter an order would be mooted, and the Commission would have no authority to make findings of past discrimination. The situation in the case before us does not differ materially from those hypothesized. Here, the Commission made a finding that extension and connection of respondents' pipeline to Duffy's tank batteries was necessary to prevent discrimination. It also made the other statutory findings essential to its order to extend and connect. Before the issue of the order's validity could be tried, it was rendered moot by the connection made by Service Pipe Line Company. The Commission expressly so stated when it withdrew its original order and the trial court impliedly so held when it dismissed the suit. When the order was expressly withdrawn, it could no longer be presumptively valid. If it were, respondents could still be subject to a court order to extend and connect its pipelines to petitioners' wells, a result which would be wholly anomalous. When the issue of validity of the order became moot, all incidental findings were also moot. But mootness of the Commission's order and its incidental finding of discrimination did not destroy petitioners' cause of action for damages. Their suit stood on the court's docket for trial of the issue of discrimination and the amount of their damages. The court of civil appeals erred in affirming the take-nothing judgment on the ground that a final and subsisting Commission order finding discrimination was prerequisite to petitioners' right to sue for and recover damages.

Respondents assigned other reasons in their motion for summary judgment why petitioners' claims for damages should be denied, in whole or in part, only two of which are not disposed of by what we have written. They are that (1) petitioners are not entitled to damages *during the appeal* from the order of February 21, 1962, because respondents have a right to safe judicial review without running the risk of having to pay substantial damages, and (2) petitioners are not entitled to damages after August 21, 1964, because petitioners entered into an agreement on that date for a connection with another pipeline company.

■ We can think of no sound reason for holding that respondents' liability for actual damages did not continue during pendency of their appeal from the Commission's order. Interest on contractual obligations and on damages which are certain and ascertainable continues to run during pendency of suits in which the right to recover on the primary obligation or wrong is seriously questioned. Damages for a continuing trespass up to the date of judgment are recoverable, although the trespass may be stoutly denied and contested. We are not concerned on this appeal with the right of the Attorney General to recover

penalties during pendency of respondents' suit. That question was finally decided in State v. Crown Central Petroleum Corp., Tex.Civ.App., 369 S.W.2d 458, and, whether correctly or incorrectly decided, is not open for review.

■ Respondents are not entitled to a partial take-nothing summary judgment as to damages sought by petitioners from August 21, 1964 to November 1, 1964. Their summary judgment proof that petitioners entered into an agreement with another pipeline company on August 21, 1964, to take their oil is controverted by an affidavit made on behalf of petitioners, and a fact issue is thus created.

The judgments of the court of civil appeals and trial court are reversed and the cause is remanded to the trial court for a conventional trial on the merits.

## CONCURRING IN PART AND DISSENTING IN PART

GRIFFIN, Justice.

I agree with the judgment of the majority opinion reversing this case and remanding it for a new trial, but I disagree with the reasons announced in that opinion. I do not agree that when the Railroad Commission on August 21, 1964, entered its order withdrawing its order of February 21, 1961, finding discrimination existed and ordering Crown Central to connect its pipelines to the Duffy Lease tanks, it thereby did away with its finding of discrimination.

Neither do I agree that a finding that discrimination existed against petitioners-plaintiffs by defendant Crown Central is an incidental finding to the recovery of damages by the plaintiffs. There can be no recovery of damages under Sec. 11c, Art. 6049a unless there is or has been discrimination against the plaintiffs. That discrimination must be the kind of discrimination prohibited by statute. At common law and prior to the passage of the statutes defining and prohibiting discrimination, a

purchaser of petroleum products could purchase from such producers as it pleased and could refuse to purchase from such producers as it pleased, and there was no penalty for such conduct. Such discrimination was not unlawful, but on the contrary was lawful. This practice encouraged monopoly and penalized, or in fact might bankrupt the producer unable to sell his production.

In 1899 the Legislature passed laws providing that corporations could be formed for the purpose of transporting, buying and selling oil and gas, laying pipelines, constructing terminals, etc. These corporations were given power of eminent domain in acquiring necessary rights-of-way, storage facilities, etc. This law provided that it should be unlawful for any such corporation to discriminate in the use of its pipeline facilities. Penalty for violation was a misdemeanor, and officers and agents of the corporation could be fined and imprisoned in the county jail for permitting or engaging in discrimination. The Railroad Commission was not mentioned as the regulatory body.

By Act of the 35th Legislature (1917), Regular Session, Ch. 30, p. 48, the Legislature defined pipelines as common carriers, declared them public utilities, and gave the Railroad Commission power to regulate them. The Act further prohibited discrimination in favor of or against individuals, associations, or corporations in the conduct of the oil and gas business. The Railroad Commission was given the power to establish and enforce rules and regulations governing the pipeline common carriers in the conduct of their business, and making it the duty of the Commission to exercise such power upon petition of any person having a substantial interest in the subject. Sec. 7 of this Act prevented discrimination by the pipeline common carriers and provided that the general fixing of rates "shall not limit the right of the Commission to prescribe rates *and regulations* different from or to some places from other rates *and regulations*" as it may determine;

"nor shall any carrier be guilty of discrimination when obeying any order of the Commission." Sec. 7 is found as Art. 6045 of our present Revised Civil Statutes.

Acts, 41st Legislature (1930), 5th C.S., Ch. 36, p. 171, set forth in the caption that it "[was] an act enlarging the powers and duties of the Railroad Commission * * * forbidding discrimination in the purchase of crude petroleum, except as authorized by the Railroad Commission of Texas * * *" etc. This Act was partialy re-enacted, additions were made, and provisions rewritten by the next Legislature, the 32nd, and Art. 6049a, as it now stands, was the result of this later legislation. Generally speaking, the first six sections of the first Act were set out in haec verba in the last Act. Sec. 7 of the present Art. 6049a provides that either upon complaint or on its own initiative and after proper notice, the Railroad Commission may "authorize or require by order any person * * * or corporation owning or operating pipe lines * * * which is a common carrier as defined by law * * * to extend or enlarge such pipe lines, or storage facilities, *provided such extension or enlargement shall be found to be reasonable and required in the public interest and that the expense involved will not impair the ability of such common carrier or public utility to perform its duty to the public.*" (Emphasis added.) Who is to determine whether or not an extension of the pipeline of a common carrier is necessary? It can only be the Railroad Commission, and it only after deciding the questions that the extensions are reasonable and required in the public interest and will not impair the ability of the common carrier or public utility to serve the public. Courts are not to determine these questions of public policy in the face of a statute giving the jurisdiction over these questions to an administrative agency—in our case the Railroad Commission.

The very next section of Art. 6049a, i. e., Sec. 8, prohibits discrimination "in favor of one producer or person against another in the same field, and *without unjust or unreasonable discrimination* as between fields in this State; the question of justice or reasonableness to be determined by the Railroad Commission taking into consideration the production and age of wells in respective fields and *all other proper factors.*" Can a court make this determination or has the Legislature committed this matter to the Commission? The answer is obvious. The Commission is much better equipped and experienced in this phase of the law, and much more uniformity in decision will result if the Commission, and not the courts, makes this decision. This Section 8 concludes: "The Railroad Commission of Texas shall have authority, however, to relieve any such common purchaser, after due notice and hearing as hereinafter provided, from the duty of purchasing petroleum of inferior quality or grade." Here again I ask, can a court determine the exception and relieve the purchaser of *unlawful* discrimination? Discrimination in purchase of products will still exist, but if the Commission permits such, it is not unlawful, and the common purchaser cannot be penalized in or by any court for such discrimination.

Sec. 8a provides in substance that a common carrier or common purchaser of gas "shall purchase, or take, such gas under such rules or regulations as may be prescribed by the Commission" and "under the same inhibitions against discrimination and subject to the same provisions" as apply to common purchasers of oil.

Sec. 8b provides:

"It shall be the duty of the Railroad Commission of Texas to see that the provisions of this Act are fully complied with, and it shall have the power, after notice and hearing, to make rules, regulations and orders, defining the distance that extensions or gathering lines shall be made to all oil or gas wells; and such other rules, regulations or orders as may be necessary to carry out the provisions of this Act, and to prevent discrimination in purchases."

Under the provisions of Sec. 7 the Commission must find such extensions "reasonable and required in the public interest and that the expense involved will not impair the ability of such common carrier or public utility to perform its duty to the public."

Sec. 9 provides: "The Railroad Commission of Texas shall have authority to make rules and regulations for the enforcement of the provisions of this Act."

Sec. 10 confers jurisdiction upon the Commission, after proper notice and hearing, to hear and determine any question relating to the enforcement of the Act prohibiting discrimination as defined in Art. 6049a.

Sec. 11 provides that the State of Texas (and it must act through its Attorney General) may bring suit in the District Court of Travis County for violation of any provisions of Art. 6049a, any valid rule, regulation, or order promulgated by the Railroad Commission under Art. 6049a. Sec. 11 further provides that "[o]ne half of such penalty may be recovered by and *for the use of any person, association of persons or corporation against whom there shall have been an unlawful discrimination as herein defined * * *.*"

Sec. 11c is the provision under which plaintiffs, Duffy et al., brought their suit for private damages. It provides for suit by any person, etc. *who "is discriminated against* by a common purchaser *as defined herein in favor"* of its own production over another producer such as Duffy et al.

From a study of the above sections of the statute, we find that it is not every discrimination that is unlawful, and only an unlawful discrimination can be found by the Commission. The Commission is expressly given the power to determine the question of discrimination and to permit discrimination in certain instances. Where the Commission finds no unlawful discrimination or that it is not reasonable or feasible to require a pipeline to connect with a producer's tank battery, then there is no discrimination for which such producer is given a cause of action. In fact, Art. 6045 provides "nor shall any carrier be guilty of discrimination when obeying any order of the Commission."

The majority says the determination by the Commission as to the existence of discrimination is an "incidental finding" which is essential to the granting of the relief sought. The finding of unlawful discrimination by the Railroad Commission is the very basis for any cause of action which one that is discriminated against has against the "discriminator." No discrimination, no cause of action for damages. Sec. 11c, Art. 6409a. Only the Commission can make this finding, for to find discrimination the statute sets out what the Commission must first find. If the majority is correct, then a court can punish a party for discrimination in obeying an order of the Commission, when Art. 6045 expressly prohibits such punishment.

We must keep in mind that it is only by virtue of legislative enactment of the statute that there is any liability for discrimination. Prior to statutory enactment, there was no *unlawful discrimination,* nor could there be any recovery for discrimination.

In our case the Commission, after notice and hearing, entered its order of February 21, 1962, finding, among other things, "that a reasonable extension of the pipeline transportation system and connections to the B. A. Duffy tank batteries, as prayed for in the complaint filed in this application are [sic] reasonably necessary to prevent discrimination prohibited by law * * *." Then follows the necessary and requisite findings which Sec. 7 requires before extensions can be ordered by the Commission. This order was a valid and final order when entered, and Art. 6042 provides in part, " * * * and until set aside or vacated by some order or decree *of a court of competent jurisdiction,* all orders of the Commission as to any matter within its jurisdiction shall be accepted as prima facie evidence of their validity." This order, finding unlawful discrimination, has never been set aside, changed, or modified by a

court of competent jurisdiction. Upon its entry, Crown Central appealed this order to a district court of Travis County, Texas, and the jurisdiction of that court attached to determine the validity of the order. For more than three years Crown Central never tried the case or did anything, so far as this record shows, to bring it to trial.

On August 21, 1964, Crown Central filed its motion with the Commission alleging they had another pipeline company that would make the connection to Duffy's tank batteries and purchase his production. On that date the Commission entered an order reciting in part that it was of the opinion that its order of February 21, 1962, ordering the connections, would withstand the attack made on it and was a valid order, but that in the interest of providing early pipeline connection to the property involved, it withdrew its order of February 21, 1962, requiring Crown Central to make connections to Duffy's tank batteries PROVIDED, HOWEVER, the withdrawal of the order is *based solely* upon the completion of extension and connection within a reasonable time or the order for connection would be reinstated. Not one word was said about the discrimination suffered by Duffy until the connection was made. The record shows the connections were made and Duffy production purchased at the tank batteries about November 1, 1964. Then the Commission recognized the connections had been made, and there was no further need for the original connection order, and that the matter of extension and connection was now moot.

It was after November 1, 1964, and that Commission's final order, when Crown Central secured a dismissal of its appeal from the Commission order of February 21, 1962.

The nearest case in point I have been able to find is that of Shaver v. National Title & Abstract Co., Tex.Sup., 361 S.W.2d 867 (1962), wherein Shaver had bought a tract of land and the title company had is-

sued its title insurance policy certifying that there were no encumbrances against the land except as shown in the policy. Suit was brought by Shaver to recover damages against the title company because of an easement across the insured land in favor of a gas company, which easement was not shown or excepted in the policy of title insurance. The case was tried in the district court, and on a jury verdict favorable to plaintiff, a judgment was rendered for the damages found by the jury. When the case reached this Court on appeal, the title company filed a motion to dismiss the cause as moot, for the reason that since the trial of the case in the district court, the gas company had released the pipeline easement and abandoned the use of the pipeline across plaintiffs' land. This Court denied the motion to dismiss, saying:

"The damages which plaintiffs seek are those resulting from the breach of the defendants' contract to guarantee plaintiffs a good and indefeasible title. Those damages were suffered prior to the trial of this cause in the District Court and the amount of such damages, if any, suffered by plaintiffs has not been paid. Plaintiffs' rights to recovery still exist and recompense can be made them only by a final determination of this case. The case is not moot, and we overrule defendants' motion to dismiss. Sterling v. Ferguson, 122 Tex. 122, 53 S.W.2d 753 (1932); Polk v. Davidson, 145 Tex. 200, 196 S.W.2d 632 (1946); 3 Tex.Jur.2d 313, Sec. 50."

See also the following authorities, whose reasoning is in accord with our holding on this point. 3 Tex.Jur.2d 314, Appeal & Error, Sec. 50; id. p. 318, Sec. 53; and id. p. 323, Sec. 58; 73 C.J.S. Public Administrative Bodies and Procedure § 268, p. 629. In our case at bar, as in the Shaver case, petitioners seek to recover the damages they allege they suffered while they were unlawfully discriminated against by respondents. These damages, if any, must be litigated in a proper court and not before the Railroad Commission. Gregg v. Del-

hi-Taylor Oil Corp., 162 Tex. 26, 344 S. W.2d 411 (1961).

I would hold (1) that only the Railroad Commission is given authority by the Legislature to determine the question as to the existence of unlawful discrimination. A court cannot try out this issue because it involves the exercise of discretion by the Commission as to the best interest of the public and of the public utilities involved and the character of service it can render to the public. (2) That the Commission did determine that discrimination existed in this case. Crown Central has had its day in court on this question by perfecting an appeal from this finding and order of the Commission. Crown Central has never obtained a judgment of a court of competent jurisdiction setting aside, modifying, or reversing such order. Therefore, it is a valid, existing order and may not now be collaterally attacked in this proceeding. (3) Plaintiffs must have a trial of their cause of action seeking damages and be given an opportunity to present such case as they may be able to establish. (4) The granting of summary judgment was incorrect, and this case should be tried in the district court.