**Bruce PENNY and James Penny, Plaintiffs–Appellants,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant–Appellee.**

No. 89–2661.

United States Court of Appeals, Fifth Circuit.

July 20, 1990.

Lynn J. Klement, Gary L. McConnell, McConnell & Klement, Angleton, Tex., for plaintiffs-appellants.

Richard Duffy Billeaud, Houston, Tex., for defendant-appellee.

Before POLITZ, KING, and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellants Bruce Penny and James Penny brought this suit against Southwestern Bell under the Texas Deceptive Trade Practices Act. They alleged that Southwestern Bell was discriminatory in applying certain rates and retaliated against the Pennys for complaining to Bell and the Texas Public Utility Commission (PUC) about the discriminatory rates. The district court concluded that the Pennys were required to take their complaint first to the PUC. The district court dismissed the case without prejudice for failure to exhaust administrative remedies. Disagreeing with the district court's conclusion, we vacate its dismissal. Because we find that the PUC can play a useful role in the adjudication of this claim, however, we apply the doctrine of primary jurisdiction. Accordingly, we remand to the district court to defer to the PUC to make a determination as to whether the rates were discriminatory. The remainder of the case is to be held in abeyance until the PUC has had reasonable time to make this determination.

## I. *Facts at Your Fingertips*

In 1983, Bruce and James Penny began operating a bulletin board service in three Texas cities. Their business provided information exchange services through the use of computer systems, modems, and telephone lines. The Pennys had sixteen telephone access lines for which they were paying the lowest rates available to a business.

According to the Pennys, in 1986 and 1987 the level of use of their service declined significantly. At that time they became aware that their competitors were being charged a lower rate for their telephone access. Southwestern Bell, they claim, was billing the competitors at a residential rate rather than at the business rate charged the Pennys.

In March 1987, Bruce Penny sent a letter to Southwestern Bell complaining of the rates he was being charged. Three months later, he filed an informal complaint with the PUC. He alleged that the disparate rate application was interfering with his ability to compete.

The PUC responded by letter to Penny's claim. The letter answered a number of specific questions posed by Penny and then concluded that "the actions taken by Southwestern Bell are correct and in accordance with its tariffs." Penny filed an opposition to the PUC's action, thereby requesting a hearing. An administrative law judge found that the PUC had jurisdiction in the matter, pursuant to the Public Utility Regulatory Act (PURA), Tex.Rev.Civ.Stat.Ann. art. 1446c (Vernon Supp.1990). The ALJ scheduled a prehearing conference.

Before the conference took place, Bell filed a proposal for new tariffs for the types of lines used in bulletin board services. During the prehearing conference, the ALJ suggested that Penny's complaint could be resolved. The parties reached a tentative settlement under which Bell's General Counsel would write a letter stating that Bell had not properly applied certain tariffs, and Penny would be permitted to intervene in the case involving Bell's recent tariff proposal. The ALJ set a date for the letter to be filed, after which time Penny would withdraw his complaint if satisfied with the letter or request leave to amend his complaint if dissatisfied.

In accordance with the agreement reached during the prehearing conference, Bell's General Counsel began to draft the requested letter. In the meantime, the ALJ scheduled a prehearing conference on Bell's proposed tariffs. Penny was permitted to intervene in that proceeding. On June 10, 1988, the day after that conference was held, Bell filed with the ALJ the final draft of its letter. Penny dismissed his original complaint. The case involving Bell's proposed new tariffs has not come a long distance; it is still pending.

In September 1988, Bruce and James Penny filed the present suit in Texas court, alleging a violation of the Texas Deceptive Trade Practices Act (DTPA), Tex.Bus. & Comm.Code Ann. § 17.01 *et seq.* (Vernon 1987 Supp.1990). They claim that they

were charged at a higher rate than their competitors and that this rate disparity eventually forced them out of business. Additionally, they claim that Southwestern Bell retaliated against them for complaining about the differences in rates. The retaliation, they contend, took the form of charging even higher rates. They also allege that Bell made misrepresentations to the Pennys at the time that they subscribed to the service.

Southwestern Bell removed the case to federal court on diversity grounds. The district court dismissed the suit without prejudice on the ground that the Pennys failed to exhaust administrative remedies, as required by PURA. The Court determined that the case could not be refiled until the PUC issued findings on the discriminatory pricing.

The Pennys urge that the district court wrongly required them to exhaust administrative remedies. They argue that PURA does not grant the PUC exclusive jurisdiction over their case because the PUC has no authority to hear their DTPA claims and because the PUC is powerless to award the damages they claim resulted from the discriminatory rate application. The Pennys' contention that the PUC does not have exclusive jurisdiction over their claim rings true. We acknowledge, however, that the PUC offers expertise and uniformity that could aid in the adjudication of this case. For this reason we apply the doctrine of primary jurisdiction. That doctrine allows a court to put a case on hold, pending a specific administrative decision.

## II. *Let the Cases Do the Talking*

### A. *Exhaustion of Remedies*

■ The district court held that the Pennys failed to exhaust their administrative remedies. By dismissing their claims on that basis, the court essentially determined that it had no original jurisdiction over the claims and that the PUC had exclusive jurisdiction over them. *See Southwestern Bell Tel. v. P.U.C. of Texas*, 735 S.W.2d 663, 669 n. 3 (Tex.App.—Austin 1987, no writ) (explaining that the exhaustion requirement comes about when a court *only*

has appellate, not original, jurisdiction to review an agency's determination).

Southwestern Bell argues, and the district court agreed, that under PURA the PUC provides the only forum for adjudication of the Pennys' complaint. PURA sets out and defines the PUC's authority. Tex. Rev.Civ.Stat.Ann. art. 1446c, § 18(b) specifically discusses the PUC's jurisdiction regarding telecommunications utilities and reads in part:

> Subject to the limitations imposed in this Act, and for the purpose of carrying out the public policy above stated and of regulating rates, operations, and services so that such rates may be just, fair, and reasonable, and the services adequate and efficient, the commission shall have exclusive original jurisdiction over the business and property of all telecommunications utilities in this state.

Southwestern Bell argues that this provision, combined with other sections of PURA, makes it clear as a bell that PURA has exclusive jurisdiction over the Pennys' case. § 38, for example, requires the PUC to ensure that rates are "just and reasonable" and that they be "sufficient, equitable, and consistent in application to each class of consumers." Other clauses prohibit public utilities from giving preferential treatment to any corporation or person and from discriminating against any person or corporation that sells or leases equipment. *See* §§ 45, 47. The district court agreed with Bell, basing its dismissal on these provisions. In light of Texas case law interpreting PURA and the particular nature of the Pennys' claims, we disagree with Bell and the district court that PURA requires dismissal.

We find that this case falls outside the purview of the PUC's exclusive jurisdiction for two reasons. First, the misrepresentation and retaliation claims clearly fall within the Texas DTPA. Even if the proper adjudicatory body were to find that Bell did not discriminate against the Pennys in the rates it charged them, the Pennys could still maintain their other causes of action. Because those claims correctly lie in a court empowered to interpret and apply the

DTPA, they are not under the PUC's jurisdiction.

This case is one of a number in which Bell has argued that PURA grants the PUC exclusive jurisdiction over claims not involving the regulation or application of its rates. In fact, this defense has almost become Bell's party line. In response to this argument, though, Texas courts consistently have held that the PUC does not have exclusive jurisdiction over tort claims against Bell. *See, e.g., Dolenz v. Southwestern Bell Tel. Co.*, 730 S.W.2d 44 (Tex. App.—Houston [14th Dist.] 1987, no writ); *Calarco v. Southwestern Bell Tel. Co.*, 725 S.W.2d 304 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Southwestern Bell Tel. Co. v. Nash*, 586 S.W.2d 647 (Tex.Civ. App.—Austin 1979, no writ); *Southwestern Bell Tel. Co. v. Reeves*, 578 S.W.2d 795 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).[1] *Cf. DFW Metro Line Services v. Southwestern Bell Telephone Co.*, 901 F.2d 1267 (5th Cir.1990) (rejecting Southwestern Bell's claim that the PUC had exclusive jurisdiction over an antitrust suit against Bell). Accordingly, the district court improperly dismissed the misrepresentation and retaliation claims.

Second, as for the discriminatory rate application claim, the PUC only has the power to *regulate* rates; it does not have the power to remedy past wrongs. The Pennys seek damages they allege were caused by the discriminatory application of the rates. The prehearing conference before the ALJ on Bruce Penny's complaint made clear that the PUC is in no position to offer monetary relief. In summarizing off-the-record negotiations during the hearing,

the ALJ explained that when Penny requested such relief, the PUC's representative had indicated that more likely relief from the PUC was "one, a clarification of the Staff's position regarding whether Southwestern Bell had correctly applied its tariffs; and, two, some prospective relief in having the tariffs applied consistently."

Texas courts have long understood that the PUC cannot have exclusive jurisdiction over claims involving requests for relief it is not authorized to grant. In *Reeves, supra*, for example, a Texas court of appeals explained: "[W]here the claim is not for future compliance but for damages based on past acts, the exhaustion of administrative remedies doctrine may not apply. Th[is] notion is based on the absence of a statute authorizing the Public Utility Commission to fix or adjudicate claims for damages." *Reeves*, 578 S.W.2d at 798 (quoting Kens, *Public Futility—The Status of Consumers in Light of the Public Utility Regulatory Act*, 28 Baylor L.Rev. 953, 968 (1976)). Following *Reeves*, the court in *Calarco* plainly stated that "[t]he Public Utility Commission does not have exclusive jurisdiction to adjudicate a customer's claim for damages based on a public utility company's past errors or omissions." *Calarco*, 725 S.W.2d at 306. Because the PUC has no power to provide the remedy sought, then, exclusive jurisdiction cannot rest in that body.[2]

### B. *Primary Jurisdiction*

The fact that the PUC does not have exclusive jurisdiction over the Pennys' rate discrimination claim does not mean that it

---

**1.** The district court distinguished each of these cases as not "on point" with the facts of the Pennys' case. Each of them involved tort claims against the telephone company for issues unrelated to rates. While we agree with the district court that "merely alleging DTPA is not sufficient in every case to confer judicial jurisdiction and override the exhaustion of remedies requirement," we cannot ignore the existence of DTPA claims of misrepresentation and retaliation in this case. Even if, as the district court asserted, "the thrust of the plaintiffs' claim is that the defendant's pricing scheme was applied in a discriminatory manner," the Pennys are still entitled to adjudication of the rest of their claim. If the claims are empty allegations, they

will be disposed of through other proper channels.

**2.** The rationale behind the rule is that the legislature may not arbitrarily abolish a common-law cause of action. Had the legislature empowered the PUC to provide an adequate substitute for those remedies available to the court through common law, or perhaps in this case the DTPA, then exclusive jurisdiction might have vested in the PUC. *See* Cofer, *Judicial Review of Agency Law Decisions on Scope of Agency Authority*, 42 Baylor L.Rev. 255, 274 & n. 126 (1990).

has no role to play in the adjudication of that claim. The PUC has some obvious expertise in the area of determining whether rates have been applied discriminatorily. Of perhaps even greater importance is the fact that the PUC can provide more uniformity in the adjudication of that issue than can the number of different courts in which the claims may be brought. Under the doctrine of primary jurisdiction, a trial court can reach out and touch that expertise and uniformity and then use the PUC's determination as a basis for determining whether and what types of damages are appropriate in a particular case. We find that pragmatic mechanism appropriate in this case.

■ Primary jurisdiction applies when a court has original concurrent jurisdiction over the claim rather than just appellate jurisdiction.[3] Hence, primary jurisdiction "comes into play whenever enforcement of the claim requires the resolution of issues [which, under a regulatory scheme, have been placed] within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Southwestern Bell v. P.U.C.*, 735 S.W.2d at 670 n. 3 (quoting *Western Pacific*, 352 U.S. at 64, 77 S.Ct. at 165). Its purpose is to assure that the administrative agency is not bypassed in a matter that the legislature has specially committed to it. *D & S Investments, Inc. v. Mouer*, 521 S.W.2d 118, 120 (Tex.Civ.App.—Austin 1975, writ ref'd n.r. e.). Since "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," each case must be examined individually to determine whether it would be aided by the doctrine's application. *Southwestern Bell v. P.U.C.*, 735 S.W.2d at 670 n. 3.

■ Primary jurisdiction applies in this case because the legislature has specifical-

ly authorized the PUC to ensure that rates are not discriminatory. By doing so, it has empowered the PUC to make determinations about whether rates have been applied in a disparate manner. A finding as to discrimination is necessary for any action that either the PUC or the court could take on the discrimination claim in this case. The court and the PUC, therefore, have concurrent jurisdiction over the discrimination issue. *See Foree v. Crown Central Petroleum Corp.*, 431 S.W.2d 312, 316 (Tex.1968) (explaining that when a finding as to a discrimination claim was essential to relief before either the court or the Railroad Commission, jurisdiction was concurrent). Hence, under the doctrine of primary jurisdiction, the court may "refrain from exercising its jurisdiction until after an administrative agency has determined some question or some aspect of some question arising in the proceeding before the court." *Bell v. P.U.C.*, 735 S.W.2d at 670 n. 3 (quoting K. Davis, *Administrative Law Treatise* § 19.01, at 373 (1972)). In this case, it may abstain from resolving the claims until after the PUC has addressed the discrimination issue.

Primary jurisdiction is not only procedurally proper in this case but it is particularly appropriate because resolution of the case would be assisted by a primary determination from the PUC regarding the discrimination issue. Since the PUC has specific authority to prohibit such discrimination, it is more accustomed to adjudicating this type of issue than is a federal district court. Routing the case through the PUC will permit the PUC to apply its specialized knowledge of rates and their application. That knowledge should prove helpful in resolving this particular claim. It should also aid in creating more uniform standards to be followed when evaluating other claims for discrimination. Hence, by allowing the PUC to determine this issue, con-

**3.** The lines distinguishing the doctrines of primary jurisdiction and exhaustion of administrative remedies (or what we refer to here as exclusive jurisdiction) are not always clearly drawn in Texas law. Sometimes the courts get the lines crossed and use the term primary jurisdiction to mean what we discuss as exclusive jurisdiction. Here, we use the terms in the way that

the Austin Court of Appeals used them in *Southwestern Bell v. P.U.C., supra,* 735 S.W.2d at 669–70 n. 3. That court derived its definitions from the United States Supreme Court's leading case describing and distinguishing the doctrines, *United States v. Western P.R. Co.*, 352 U.S. 59, 63–65, 77 S.Ct. 161, 164–66, 1 L.Ed.2d 126 (1956).

cerns for uniformity and specialized knowledge are met.

The only question left for us to address is whether any exceptions to the general rule of primary jurisdiction prohibit the court from deferring to the PUC in this case. Texas has recognized at least two exceptions to the application of primary jurisdiction: (1) when the issue is inherently judicial in nature; and (2) when the administrative agency is powerless to grant the relief sought and has no authority to make incidental findings that are essential to the granting of relief. *See Nash*, 586 S.W.2d at 649–50; *Foree*, 431 S.W.2d at 316 (naming the first exception and creating and applying the second one).[4] Neither of these exceptions applies to the Pennys' case.

The first exception is inapplicable because a decision as to whether discrimination occurred is not inherently judicial in nature, as evidenced by the fact that the PUC has the power to make the determination. While the larger claim—whether Bell violated the DTPA by charging discriminatory rates—is certainly judicial in nature, the question of discrimination is not.

The second exception also does not apply. In *Foree, supra,* the court ultimately determined that the Railroad Commission did not have primary jurisdiction over a discrimination issue due to the second exception. The Railroad Commission could not grant the sought relief and was not empowered to make incidental findings because the discrimination already had ended and the Commission was not authorized to act as a "mere agent of," or operator for, a trial court. *Foree*, 431 S.W.2d at 316–17. Hence, the trial court was not required to yield to the Commission's expertise or uniform decision-making.

The instant case differs from *Foree* in one important respect. All signals indicate that the PUC has the power to make incidental findings that are essential to the grant of relief. PURA vests the PUC with the general power "to do all things, whether specifically designated in this Act or implied herein, necessary and convenient to the exercise of this power and jurisdiction." Tex.Rev.Civ.Stat.Ann. art. 1446c, § 16(a). As a part of that power,

> [t]he commission may call and hold hearings, administer oaths, receive evidence at hearings, issue subpoenas to compel the attendance of witnesses and the production of papers and documents, and make findings of fact and decisions with respect to administering the provisions of this Act or the rules, orders, or other actions of the commission.

*Id.* This broad power to hold hearings and make findings, joined with the PUC's general mandate to prohibit discriminatory rates, indicates that the legislature intended to give the PUC the authority to make incidental findings as part of its mandate. *Cf. Lake Country Estates, supra* (invoking the doctrine of primary jurisdiction to give the Texas Department of Water Resources the first opportunity to consider those portions of complaints against directors of a municipal utility district that relate directly to legal responsibilities of the directors). This case is further distinguished from *Foree* because the PUC is still acting on the tariff issue and has even allowed Bruce Penny to intervene in that proceeding. A finding as to the issue of discrimination, therefore, would not turn the PUC into a mere agent of the court.

In any event, if the PUC chooses not to make a finding as to discrimination, the case will simply return to the district court.

---

**4.** Texas courts have on occasion considered a "third exception" to the rule. Under that "exception," the court may intervene in administrative proceedings when an agency exercises powers beyond its authority. Although this "exception" is sometimes listed along with the two discussed in *Foree, see, e.g., Television Cable Service, Inc. v. Bryant,* 684 S.W.2d 196, 199 (Tex.App.—Eastland 1984, no writ); *Lake Country Estates, Inc. v. Toman,* 624 S.W.2d 677, 681 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.),

its origin and nature make it not truly an "exception." It is derived from the Texas Supreme Court's opinion in *Westheimer Independent School Dist. v. Brockette,* 567 S.W.2d 780 (Tex. 1978). In that case, the Court merely stated the obvious point that exhaustion of administrative remedies does not apply when an administrative agency lacks jurisdiction. The court said that a court could intervene when an administrative body exceeded its authority. *See Westheimer Independent School Dist.,* 567 S.W.2d at 785.

By remanding the case to be held in abeyance until the PUC has a reasonable period of time to consider the case, we do not ask the PUC to do anything it finds outside its authority or discretion. It can hang up on the call if it wishes. We only make sure that the PUC is not bypassed in the decision-making process regarding the discrimination issue.

III. *Keeping the Lines Open*

The holding of the district court requiring the Pennys to exhaust administrative remedies was improper. The PUC has no jurisdiction over the Pennys' retaliation and misrepresentation claims and does not have exclusive jurisdiction over the Pennys' discrimination claim. The PUC does, however, have concurrent jurisdiction over the discrimination claim. Because we find the doctrine of primary jurisdiction applicable to this case, we vacate the dismissal order and remand the case to the district court to hold it in abeyance until the PUC has had reasonable time to make a determination on the question of discrimination.

VACATED AND REMANDED.