Charles ROGERS

v.

COLUMBIA/HCA OF CENTRAL
LOUISIANA, INC., et al.

Civil Action No. 96–2839.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Feb. 19, 1997.

A. Dale Smith, David A. Johnson, Smith, Farrar & Johnson, Ball, LA, for Plaintiff.

Scott Holland Crawford, Crawford & Lewis, Baton Rouge, LA, for Defendants.

*RULING*

LITTLE, Chief Judge.

Before this court is defendants' alternative motion to dismiss or for summary judgment. For the reasons that follow, the motion is GRANTED in part, and this action is ordered STAYED pending the exhaustion of plaintiff's administrative remedies.

## I. *Factual and Procedural Background*

Plaintiff Charles Rogers is a licensed physician specializing in the sub-specialty of bariatric surgery.[1] This lawsuit arises out of the revocation of plaintiffs bariatric surgery privileges at Rapides Regional Medical Center ("Rapides Regional"), a medical facility in Alexandria, Louisiana. Rapides Regional is allegedly owned and operated by defendant partners Columbia/HCA of Central Louisiana, Inc., and Central LA Healthcare Systems Limited Partnership (together hereafter "RRMC"). Defendants Philip Lindsay, George Hovnatanian, J. Michael Conerly, David Rayburn, and John McCabe (collectively hereafter the "Doctor Defendants") are licensed physicians practicing in Alexandria. Each Doctor Defendant is a surgeon on the "Active Medical Staff" at Rapides Regional. The Doctor Defendants comprised a professional peer review committee that evaluated plaintiff prior to the revocation of his bariatric surgery privileges.

Plaintiff filed the instant complaint and a first amended complaint in this court on 18 December 1996. Subject matter jurisdiction is satisfied under 28 U.S.C. §§ 1331, 1337, 1343(a)(3), 1343(a)(4), 1367, and 2201. The amended complaint materially alleges as follows.

At all relevant times prior to 4 October 1996, plaintiff was appointed to the Active Medical Staff of Rapides Regional. A physician must be on the Active Medical Staff to admit a patient to Rapides Regional. Although plaintiff enjoyed both general surgery and bariatric surgery privileges at the hospital, his practice was exclusively in the field of bariatric surgery.

On 4 October 1996, RRMC president Lynn Truelove informed plaintiff by letter that his bariatric surgery privileges at Rapides Regional had been revoked by the Medical Executive Committee of Rapides Regional for one year, effective 1 October 1996. The letter stated that plaintiff retained privileges in general surgery and had the right to a hearing concerning the decision. On 29 October 1996, RRMC caused an "Adverse Action Report" to be published in the National Practitioner Data Bank. The report about plaintiff was classified under "Incompetence/malpractice/Negligence" and described that an "[u]nacceptable level of major complications led to revocation of privileges in weight reduction surgery for one year." RRMC caused the adverse report to be expunged from the Data Bank on 11 December 1996.

On 8 November 1996, plaintiff requested a hearing concerning the revocation of his bariatric surgery privileges. Truelove, in a letter dated 21 November 1996, scheduled a hearing for 15 January 1997.[2] Truelove also detailed the reasons for the revocation of plaintiff's bariatric privileges:

> The Ad Hoc Committee formed by the President of the Medical Staff found your complication rate to be inordinately high. These complications consisted of post operative: 1) evisceration, 2) infection, 3) anastomotic leaks, 4) recurrent herniation, and 5) death. In other cases it appeared that poor surgical judgment was used, i.e. the performance of elective surgery in the face of active infection and the performance of weight reduction surgery in a 73–year–old man with a hiatal hernia.

The letter disclosed that the Doctor Defendants comprised the "Ad Hoc Committee."

---

1. Bariatric medicine generally involves the study, prevention, and treatment of obesity. Bariatric surgery typically follows two paths: (1) restrictive procedures, commonly known as banding or gastroplasties, designed to restrict the volume of food consumed by a patient; and (2) restrictive-malabsorptive procedures, commonly known as gastric bypasses, that restrict stomach volume with an alteration in the food path through the small bowel.

2. The hearing was subsequently rescheduled for 5 February 1997. This court has not been informed of the result of the hearing, or if it occurred.

There are seven claims for relief in plaintiff's complaint. Count One charges that the defendants engaged and conspired in an illegal boycott to deprive plaintiff of his staff privileges, in violation of the Sherman Act, 15 U.S.C. § 1. Count Two asserts that the defendants violated the Sherman Act, 15 U.S.C. § 1, by entering into a combination and conspiracy in an unreasonable restraint of trade and commerce. Count Three alleges that the defendants committed an unlawful monopolization under the Sherman Act, 15 U.S.C. § 2, by entering into a contract, combination, or conspiracy to prevent unlawfully plaintiff from retaining staff privileges at Rapides Regional. Count Four charges that La.Rev. Stat. Ann. § 13:3715.3 is unconstitutional. Among other things, La.Rev.Stat. Ann. § 13:3715.3 provides qualified immunity for members of hospital peer review committees. Plaintiff asserts that the statute violates three provisions of the United States Constitution: (1) due process; (2) substantive due process; and (3) the taking of property without compensation. Plaintiff also alleges that La.Rev.Stat. Ann. § 13:3715.3 violates the Louisiana constitution in that it is an "unauthorized delegation of the police power of the State of Louisiana to an individual or individuals." Complaint, ¶ 6.

Count Five alleges that the defendants are liable as state actors under 42 U.S.C. § 1983 for the constitutional violations asserted in Count Four. Count Six charges that the defendants violated the federal Health Care Quality Improvement Act of 1986 (the "HCQIA"), 42 U.S.C. § 11101, et seq. The HCQIA, in part, provides civil immunity for "professional review bodies." Count Seven asserts that RRMC defamed plaintiff by causing the notification of his revocation to be published in the National Practitioner Data Bank.

In sum, plaintiff has asserted multiple violations of the Sherman Act (Counts One, Two, and Three), that La.Rev.Stat. Ann. § 13:3715.3 is unconstitutional (Count Four), violation of 42 U.S.C. § 1983 (Count Five), violation of the HCQIA, 42 U.S.C. § 11111

(Count Six), and defamation (Count Seven). Plaintiff seeks injunctive, declaratory, and compensatory relief.

On 27 December 1996 we denied plaintiff's request for a temporary restraining order or preliminary injunction. We now consider defendants' alternative motion to dismiss or for summary judgment. Defendants seek judgment in their favor and an award of attorneys' fees and costs pursuant to the HCQIA, 42 U.S.C. § 11113.

## II. *Treatment of Alternative Motion*

■ If on a Rule 12(b)(6) motion to dismiss, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as a motion for summary judgment under Rule 56. Fed.R.Civ.P. 12(b); *Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1284 (5th Cir.1990). Defendants may file a motion for summary judgment "at any time." Fed.R.Civ.P. 56(b).[3] In this case, defendants titled their motion as an alternative motion to dismiss or for summary judgment. Both plaintiff and defendants have submitted evidence outside the pleadings. In that plaintiff was on notice that he had to come forward with all of his evidence, we will consider the instant motion to be a summary judgment motion. *Washington,* 901 F.2d at 1284.

## III. *Summary Judgment Standard*

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justi-

---

**3.** When coupled with a motion to dismiss in the alternative, a defendant's summary judgment motion serves to extend the time to answer under

Rule 12(a). *INVST Fin. Group, Inc. v. Chem–Nuclear Systems, Inc.,* 815 F.2d 391 (6th Cir. 1987).

fiable inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Conclusionary denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. *S.E.C. v. Recile,* 10 F.3d 1093, 1097 (5th Cir.1993).

### IV. *Does The Doctrine of Administrative Exhaustion Apply?*

Defendants initially assert that we should dismiss plaintiff's complaint pursuant to the "doctrine of administrative exhaustion" because he has failed to exhaust the internal procedures and remedies available to him under the Rapides Regional Medical Staff Bylaws (hereafter the "Bylaw(s)"). A Fifth Circuit court has not previously addressed whether a physician must exhaust available administrative remedies before bringing suit against a hospital or professional peer review committee that has revoked the physician's hospital privileges.

### A. *Administrative Remedies Available*

We begin our analysis of the administrative exhaustion doctrine by considering the remedies available to plaintiff under the Bylaws. The relevant Bylaws are Appendix Four to plaintiff's complaint.[4] They set forth conditions and procedures pertaining to physician clinical privileges at Rapides Regional. It is uncontroverted that the Bylaws were in effect at the time defendants initiated the peer review action against plaintiff.

### 1. *Corrective Action*

Bylaw Appendix § 1.1 sets forth procedures for "corrective action" to be taken whenever a physician "engages in profession-

al conduct, makes statements, and/or exhibits demeanor, which is or is reasonably likely to be, detrimental to the delivery of quality patient care or disruptive to hospital operations." Bylaw App. § 1.1(A). The Executive Committee has various options upon a request for corrective action, from rejecting the request to suspending or revoking the physician's privileges. Bylaw App. § 1.1(E). One option the Executive Committee has is to appoint an "ad hoc investigatory committee" to investigate the request and report to the Executive Committee before a final action is taken. Bylaw App. § 1.1(F). The hospital's authorized representative must notify the National Practitioner Data Bank of all "adverse actions" taken against a physician that are related to professional competence. Bylaw App. § 1.1(H).

### 2. *Hearing*

Physicians have the right to a hearing and appeal upon an adverse action. Bylaw App. § 2.2. The physician has thirty days to request the hearing following the receipt of a notice of right to hearing. Bylaw App. § 2.3(A). Within fifteen days of receiving a request for a hearing, the chief executive officer must schedule a hearing not less than thirty days after the date of notice, "but as soon thereafter as possible." Bylaw App. § 2.4(A). The hearing panel shall consist of not less than five members. Bylaw App. § 2.4(B). A majority of the panel shall be members of the Active Medical Staff. *Id.* Persons in "direct economic competition" with the physician are ineligible. *Id.*

The physician, hospital, and Executive Committee may be represented by counsel at the hearing. Bylaw App. § 2.4(D). A reporter shall make a record. Bylaw App. § 2.4(K). Each party may call, examine, cross-examine, and impeach witnesses, introduce and rebut relevant evidence, and submit a written statement at the close of the hearing. Bylaw App. § 2.4(E). Evidence may be admitted regardless of its admissibility in a court of law. *Id.* The burden of proof is on the physician to show by a preponderance of the evidence that the adverse action "lacks

---

4. The complete Bylaws are attached as Exhibit One to defendants' motion.

any factual basis or that the conclusions drawn therefrom are arbitrary or capricious." Bylaw App. § 2.4(F). The hearing panel shall deliver its recommendation with supporting reasons within thirty days after the hearing. Bylaw App. § 2.4(O). Decision shall be by majority of those present and voting. Bylaw App. § 2.4(L).

### 3. *Appeal*

Upon an adverse recommendation by the hearing panel, the physician may request appellate review within ten days. Bylaw App. § 2.5(A). The Board Chairman schedules and arranges appellate review within seven days. Bylaw App. § 2.5(B). Appellate review must take place between thirty and sixty days following the notice of appeal. *Id.* The appellate panel consists of not less than three members. Bylaw App. § 2.5(C)(1). All shall be members of the Medical Center Board or the Board of the hospital division. *Id.* The appellate panel shall consider the review panel record, as well as written statements by each party. Bylaw App. §§ 2.5(C)(1–3). The appellate review panel shall affirm the hearing panel unless it finds the holding to be "clearly wrong and that the adverse action was taken arbitrarily, capriciously or without factual basis." Bylaw App. § 2.5(C)(8). Decision is by majority and shall be made within thirty days of adjournment. Bylaw App. § 2.5(C)(9).

### B. *Administrative Exhaustion Doctrine*

■■■■ The administrative exhaustion doctrine is a judicially created rule limiting jurisdiction. The doctrine provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194, 203 (1969). The doctrine is a "flexible concept tailored to the administrative statutes and circumstances." *Ecology Center of Louisiana, Inc. v. Coleman,* 515 F.2d 860, 866 (5th Cir.1975). The United States Supreme Court has explained:

Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Bowen v. City of New York,* 476 U.S. 467, 484, 106 S.Ct. 2022, 2032, 90 L.Ed.2d 462, 477 (1986).

Both federal and state courts have applied the exhaustion doctrine to dismiss or stay suits brought by physicians after an adverse professional review action was taken against them. *Bigman v. Medical Liability Mut. Ins. Co.,* 1996 WL 79330 (S.D.N.Y.1996); *Huntsville Memorial Hosp. v. Ernst,* 763 S.W.2d 856 (Tex.Ct.App. 14th Dist.1988); *Eidelson v. Archer,* 645 P.2d 171 (Alaska 1982); *Garrow v. Elizabeth General Hosp. and Dispensary,* 79 N.J. 549, 401 A.2d 533 (1979).

■■■ In this case, however, we hold that the exhaustion doctrine does not apply. Courts and counsel have frequently confused the closely related judicial doctrines of administrative exhaustion and "primary jurisdiction."[5] *United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126, 132 (1956); *Johnson v. Nyack Hosp.,* 964 F.2d 116, 122 (2nd Cir. 1992). As more fully explained below, we find that the primary jurisdiction doctrine, not exhaustion, applies in this case.

■■■■ Exhaustion applies "where a claim is cognizable in the first instance by an administrative agency alone." *Western Pac. R.R.,* 352 U.S. at 63, 77 S.Ct. at 165, 1 L.Ed.2d at 132. In such a case, the court will not consider the factual and legal issues until completion of the administrative process. *Id.* The primary jurisdiction doctrine, on the other hand, applies "where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within

---

**5.** In eighty-seven pages of briefs submitted for this motion, neither party referred to the primary jurisdiction doctrine.

the special competence of an administrative body...." *Id.* at 64, 77 S.Ct. at 165, 1 L.Ed.2d at 132. Where primary jurisdiction applies, the court suspends the judicial process pending referral of such issues to the administrative body for its views. *Id.*

We find *Johnson v. Nyack Hospital* to be instructive on whether exhaustion applies. 964 F.2d 116. In that case, a physician whose hospital surgery privileges were revoked sued the hospital and a peer review board. *Id.* at 118. The district court, relying on the doctrine of administrative exhaustion, granted the defendants' motion for summary judgment and dismissed the complaint. The court found that the plaintiff physician was obligated to exhaust his administrative remedies by filing a complaint with the New York Public Health Council. *Id.* at 120. On appeal, the Second Circuit upheld the judgment, but held that the doctrine justifying dismissal was primary jurisdiction, not exhaustion. *Id.* at 122.

■ We are in accord with the Second Circuit's *Johnson* decision. We find that in this case, plaintiffs claims were not cognizable by a Rapides Regional administrative panel *exclusively.* See *Western Pac. R.R.*, 352 U.S. at 63, 77 S.Ct. at 164–65, 1 L.Ed.2d at 132. Federal courts have exclusive jurisdiction over federal antitrust lawsuits. *See, e.g., Derish v. San Mateo–Burlingame Bd. of Realtors,* 724 F.2d 1347, 1349 (9th Cir.1983). Federal jurisdiction also exists over plaintiff's remaining claims. It would be anomalous if we were to interpret the HCQIA and La.Rev.Stat. Ann. § 13:3715.3 to mean that professional peer review committees have exclusive jurisdiction to hear complaints brought by doctors. We accordingly conclude that the exhaustion doctrine does not apply in this case.

## V. Does the Primary Jurisdiction Doctrine Apply?

■ Although the exhaustion doctrine does not apply, this does not end our analysis of whether it is appropriate for us to resolve this dispute prior to plaintiff's exhaustion of his administrative remedies. We hold that the primary jurisdiction doctrine applies to this case, and stay further proceedings until plaintiff has exhausted his administrative remedies.

■ The primary jurisdiction doctrine applies "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body...." *Western Pac. R.R.* 352 U.S. at 64, 77 S.Ct. at 165, 1 L.Ed.2d at 132; *Northwinds Abatement, Inc. v. Employers Ins. of Wausau,* 69 F.3d 1304, 1309 (5th Cir.1995). Application of the doctrine is on a case-by-case basis, with an emphasis on "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Western Pac. R.R.,* 352 U.S. at 64, 77 S.Ct. at 165, 1 L.Ed.2d at 132. The Fifth Circuit has identified three elements required for the doctrine to apply:

(1) the court has original jurisdiction over the claim before it; (2) the adjudication of that claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body.

*Northwinds Abatement,* 69 F.3d at 1311.

We have already held that we have original jurisdiction in this case. As to the second element, we find that the adjudication of each of plaintiffs claims requires the resolution of predicate issues. The success of plaintiff's claims depends on whether the defendants are immune under HCQIA and La.Rev.Stat. Ann. § 13:3715.3. This cannot be determined until the professional review action is completed. The exhaustion of the administrative process also will allow for the development of a full factual record. This is specifically relevant concerning plaintiffs charges that RRMC's publication in the National Data Bank was defamatory, and that defendants violated antitrust laws by acting without consulting a bariatric surgeon. The completion of the administrative process will also give the defendants a chance to discover and correct their own errors, if any exist. *See*

*McKart,* 395 U.S. at 195, 89 S.Ct. at 1663, 23 L.Ed.2d at 204.

The third element requires us to determine whether Congress, through enactment of the HCQIA, and the Louisiana legislature, through La.Rev.Stat. Ann. § 13:3715.3, established a "regulatory scheme" whereby they committed the resolution of findings to an administrative body. The HCQIA promotes physician peer review and establishes a national data bank on physicians as a way of dealing with incompetence and unprofessional conduct within the medical profession. 42 U.S.C. § 11101. It provides qualified immunity for professional peer review actions. 42 U.S.C. § 11111. The Secretary of Health and Human Services may establish voluntary guidelines to assist professional review bodies. 42 U.S.C. § 11114. The Secretary shall also provide regulations providing for the disclosure of national data bank information to physicians, and for procedures in the case of disputed accuracy of the information. 42 U.S.C. § 11136; 45 C.F.R. § 60.14.

La.Rev.Stat. Ann. § 13:3715.3 is the state counterpart to the HCQIA. It establishes qualified immunity and confidentiality under state law for peer review committees. "The obvious legislative purpose behind this statutory provision is to encourage the medical profession to police its own activities with minimal judicial involvement." *Smith v. Our Lady of the Lake Hosp., Inc.,* 639 So.2d 730, 742 (La.1994).

The regulatory scheme here is not as obvious as when Congress creates an administrative agency, such as the Interstate Commerce Commission. *E.g. Delta Traffic Serv., Inc. v. Appco Paper & Plastics Corp.,* 893 F.2d 472 (2nd Cir.1990). Neither Rapides Regional nor the peer review committee are government agencies. They also are not created by statute. This case could be distinguished on those grounds from *Northwinds Abatement,* 69 F.3d 1304, a typical primary

jurisdiction case. *See County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1309–10 (2d Cir.1990) (holding that primary jurisdiction doctrine ordinarily may not be used by a federal court in favor of a state agency). In *Northwinds Abatement,* the Fifth Circuit held that the doctrine of primary jurisdiction applied to stay a workers' compensation claim in federal court. The court found that the Texas Insurance Code committed the making of factual findings in that case to the Texas Workers' Compensation Insurance Facility, a nonprofit unincorporated association of insurers created by statute; the State Board of Insurance; and the Texas Workers' Compensation Commission. *Id.* at 1311; *see also Penny v. Southwestern Bell Telephone Co.,* 906 F.2d 183 (5th Cir.1990) (primary jurisdiction doctrine applied in discriminatory rates suit against utility, where legislature specifically authorized Texas Public Utilities Commission to ensure that rates were not discriminatory).

Although professional peer review panels are not government agencies, we find that the primary jurisdiction doctrine does not rely on this factor alone. While the HCQIA does not create a monolithic regulatory agency for health care, the statute nevertheless creates a substantial regulatory "scheme" intended to "improve the quality of medical care" by endorsing and protecting professional peer review. 42 U.S.C. § 11101(1). Evidence of a regulatory scheme also can be found in the regulations provided by the Department of Health and Human Services. 45 C.F.R. §§ 60.1–60.14. These regulations, among other things, establish a procedure for physicians to challenge postings in the National Practitioner Data Bank.[6] 45 C.F.R. § 60.14.

Our holding that we must wait for plaintiff to exhaust his administrative procedures is consistent with the rationale behind the primary jurisdiction doctrine. First, by granting professional peer review committees qualified immunity, both Congress and the

---

**6.** Neither party has suggested if plaintiff complied with the administrative procedures provided by the Department of Health and Human Services for challenging Data Bank notices. 45 C.F.R. § 60.14. We note that the adverse report to the Data Bank was expunged. Our holding

that the primary jurisdiction doctrine applies does not contemplate whether a physician plaintiff must complete the federal administrative process before seeking defamation damages for an adverse action report to the Data Bank. We leave this question open for later consideration.

Louisiana legislature vested peer committees the authority to make factual findings. Second, the expertise of professional peer review committees makes them specially qualified to make findings as to the competence of fellow physicians.[7] We find that the evaluation of professional proficiency of physicians is best left to their peers, subject only to limited judicial surveillance. *See Sosa v. Bd. of Managers of Val Verde Memorial Hosp.* 437 F.2d 173, 177 (5th Cir.1971). Third, we believe that judicial economy will be best served by requiring plaintiff to exhaust his administrative remedies. Perhaps a solution may be reached without further judicial intervention.

## VI. *Is Plaintiff's Failure to Exhaust Administrative Remedies Excused?*

The doctrine of primary jurisdiction, like most judicial doctrines, is subject to exceptions.[8] *Penny,* 906 F.2d at 188. We accordingly consider if there is an exception present to excuse plaintiff from exhausting his administrative remedies. We conclude that there is not.

■ The Fifth Circuit has recognized at least two exceptions to the doctrine: (1) when the issues to be adjudicated are inherently judicial in nature; and (2) when the administrative agency is powerless to grant the relief sought and has no authority to make incidental findings that are essential to the granting of relief. *Id.* Neither of these exceptions applies to plaintiff's case.

The first exception is inapplicable because while the larger constitutional and antitrust questions are certainly judicial in nature, the underlying evaluation of the physician plaintiff's competence is better left to a professional peer review committee. For similar reasons, the second exception does not apply. The peer review process cannot remedy plaintiff's antitrust claims, but might render them moot. We have previously noted that

both the federal and state legislatures have endorsed physician peer review. We also find that the factual findings of the peer process are essential to the granting of relief in this case.

■ Recognizing that the primary jurisdiction doctrine should be rarely and carefully applied, we consider additional exceptions to the doctrine. Plaintiff's exhaustion of administrative remedies would be excused if submitting to the administrative process would be futile or inordinately expensive or time-consuming. *See Crawford v. University of North Carolina,* 440 F.Supp. 1047, 1057 (M.D.N.C.1977). Having considered the procedures and deadlines required by the Bylaws, we conclude that the process should be completed quickly and efficiently. If not, we are available to revisit this question. We cannot be certain that the administrative process will resolve this dispute. Review by one's professional peers, however, rarely can be classified as futile.

We also find no evidence to suggest that the defendants have rigged the administrative process so egregiously as to make completion of the process meaningless. We conclude this after considering that the Fifth Circuit has held that due process is not violated when a physician's hospital privileges are suspended before there is a hearing. *Darlak v. Bobear,* 814 F.2d 1055, 1063 (5th Cir.1987).

Having concluded that the primary jurisdiction doctrine applies in this case, we stress the limits of our holding. Our conclusion is fact-based, after an intensive review of the administrative remedies available to the plaintiff. Underlying our decision is our assessment that the benefit of further factfinding and review by peer judges professionally familiar with this case outweighs the detriment of short delay.

---

7. *See* Robert S. Adler, *Stalking the Rogue Physician: An Analysis of the Health Care Quality Improvement Act,* 28 Am. Bus. L.J. 683, 696–700 (1991). Physician peer review members "make neither money nor friends" 28 Am. Bus. L.J. at 697. In one respect, at least, they may be like judges.

8. One court has commented that the primary jurisdiction doctrine "is so vaguely defined and subject to so many exceptions that its very existence is open to doubt." *Trustees of the National Automatic Sprinkler Industry Pension Fund v. American Automatic Fire Protection,* 680 F.Supp. 731, 735 (D.Md.1988).

## VII. *Attorneys' Fees*

A defendant that satisfies the standards for professional review actions under the HCQIA, 42 U.S.C. § 11112, and "substantially prevails" in a lawsuit, may be entitled to payment of reasonable attorneys' fees and costs if the claim, or the claimant's conduct during litigation, was "frivolous, unreasonable, without foundation, or in bad faith." HCQIA, 42 U.S.C. § 11113. The stay of this action pending completion of administrative procedures does not mean that the defendants have "substantially prevailed." Consideration of the attorneys' fees issue is at this time premature.

## VIII. *Conclusion*

Defendants' motion to dismiss or for summary judgment is GRANTED only as to the question of whether plaintiff must exhaust his administrative remedies prior to pursuing his suit in this court. We conclude that under the specific facts of this case, the doctrine of primary jurisdiction applies. We therefore do not further consider the merits of defendants' motion.

This action is ordered STAYED pending exhaustion of plaintiff's administrative remedies.