United States Court of Appeals,

Fifth Circuit.

No. 94-20954.

NORTHWINDS ABATEMENT, INC., Plaintiff-Appellant,

v.

EMPLOYERS INSURANCE OF WAUSAU, Defendant-Appellee.

Dec. 5, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before KING, DeMOSS and STEWART, Circuit Judges.

PER CURIAM:

Northwinds Abatement, Inc. ("Northwinds"), initially brought this action in state district court against Employers Insurance of Wausau ("Wausau"), alleging several theories of recovery for damages resulting from actions taken by Wausau as the servicing company for Northwinds's workers' compensation insurance policy. Wausau removed the action to federal district court. The district court granted summary judgment to Wausau on all claims. Northwinds appeals. We affirm in part and reverse in part the court's order granting summary judgment and remand with instructions that the case be held in abeyance until relevant administrative procedures are completed.

I. FACTUAL AND PROCEDURAL BACKGROUND

Northwinds is a corporation in the business of asbestos abatement remediation and removal work. Northwinds applied for workers' compensation insurance through the Texas Workers'

1

Compensation Insurance Facility ("the Facility").[1] The Facility is a nonprofit unincorporated association of insurers created by statute. Tex.Ins.Code Ann. art. 5.76-2, § 2.01. One of the stated purposes of the Facility is to provide insurance coverage for employers who are unable to obtain insurance in the voluntary market. *Id.* § 4.01. Specifically, the Facility provides such coverage through the Texas Workers' Compensation Employers' Rejected Risk Fund ("the Fund"). *Id.*

When the Facility determines that an employer is entitled to insurance through the Fund, the Facility calculates the employer's deposit premium and, upon payment, designates a "servicing company" to issue the policy. *Id.* § 4.02(b). The servicing company may be an insurer that is a member of the Facility, an insurer that is not a member of the Facility, or a non-insurer. *Id.* § 4.08(a), (d). The servicing company contracts with the Facility to issue policies evidencing the insurance coverage provided by the Fund and to service the risk. *Id.* § 1.01(15). While the servicing company is the issuer of the policy, the Facility itself is the insurer. *See id.* § 4.02(b); *Maintenance, Inc. v. ITT Hartford Group, Inc.*, 895 S.W.2d 816, 819 (Tex.App.—Texarkana 1995, writ denied). The undertaking of the policy is in turn reinsured by all members of the Facility; that is, the members of the Facility collectively

---

[1]The Facility was formerly known as the Texas Workers' Compensation Assigned Risk Pool ("the Risk Pool"), and is referred to by that designation in many documents in this lawsuit. The Facility replaced the Risk Pool effective January 1, 1991. Act of Dec. 11, 1989, 71st Leg., 2nd C.S., Ch. 1, § 17.09(1) 1989 Tex.Gen.Laws 1, 117.

reinsure each policy issued through the Facility. Tex.Ins.Code Ann. art 5.76-2, § 4.02(b). Each member's share of the reinsurance liability is based on the relative amount of premiums on insurance written by the member during the preceding year. *Id.* Therefore, the servicing company that issues the policy is not liable under the policy as the primary insurer. Rather, if the servicing company is a member of the Facility, its liability under the policy is limited to its usual share of the reinsurance liability; if the servicing company is not a member of the Facility, it is not liable under the policy at all. *Id.*

Notwithstanding the servicing company's limited liability under the policy, it still performs many of the traditional functions of an insurer. Besides issuing the policy, the servicing company is also responsible for, inter alia, investigating, reporting, and paying claims, inspecting risks for classification purposes, and conducting legal support as required by the policy. *Id.* § 4.08(c). The coverage itself, however, comes from the Fund, which is separate from the state treasury and has its own investment policy. *Id.* § 2.07.

Wausau, a member of the Facility, was designated as the servicing company for Northwinds's workers' compensation insurance policy. On April 30, 1993, Northwinds filed suit against Wausau in state district court in Harris County, Texas. Wausau timely removed the case to the United States District Court for the Southern District of Texas based on diversity of citizenship under 28 U.S.C. § 1441. Northwinds did not seek remand.

In its complaint, Northwinds alleged that Wausau mishandled four workers' compensation claims during calendar year 1991. Specifically, Northwinds asserted that these claims were fraudulent, but that Wausau paid the claims without investigating them. As a result of these improper payments, Northwinds alleged that its premiums for workers' compensation coverage increased and its coverage was ultimately cancelled. Further, Northwinds claimed that the improper payments caused its experience modifier rate ("EMR") to exceed 1.0, thereby impeding its ability to compete for asbestos abatement contracts because many customers will not accept bids from a contractor with such a high EMR.

The complaint sought relief under several theories of recovery: breach of an insurer's duty of good faith and fair dealing, the Texas Deceptive Trade Practices Act, certain provisions of the Texas Insurance Code, breach of fiduciary duty, negligence, gross negligence, unfair settlement practice, affirmative misrepresentation, and breach of contract. The complaint prayed for the recovery of $15 million in actual damages, $60 million in exemplary damages or $45 million in statutory treble damages, attorneys' fees, interest, and costs.

On August 18, 1994, Wausau filed a Rule 12(b)(1) motion to dismiss for lack of jurisdiction on the grounds that Northwinds had failed to exhaust its administrative remedies through the Facility and the Texas Department of Insurance. The district court denied this motion, finding that the doctrine of exhaustion of administrative remedies did not apply in this case.

Wausau then filed a motion for summary judgment, contending that it was not liable to Northwinds under any theory because it was only a servicing company for the Facility and not Northwinds's insurer. The district court granted this motion, relying principally on an opinion by the Texas Court of Appeals that dealt with this precise issue, *Maintenance, Inc. v. ITT Hartford Group, Inc.,* No. 06-94-00046-CV, 1994 WL 575769 (Tex.App.—Texarkana Oct. 21, 1994) (not designated for publication). In that case, an employer insured through the Risk Pool, the Facility's predecessor, sued the designated servicing company on its policy. Specifically, the employer alleged that the servicing company's mishandling of workers' compensation claims caused its EMR to rise to the point where it could no longer afford workers' compensation insurance. The employer sought recovery for breach of the duty of good faith and fair dealing and violations of the Texas Deceptive Trade Practices Act. The court *apparently* held that the servicing company was not liable under any of these theories because the servicing company was not the employer's insurer and because the servicing company did not otherwise have a contractual relationship with the employer.[2] Relying on this holding, the district court granted Wausau's summary judgment motion as to all claims. Northwinds timely appealed.

II. DISCUSSION

---

[2]The Texas Court of Appeals' holding in *Maintenance* must be inferred from the district court's Memorandum and Order because the text of this *Maintenance* opinion is not available. The text is unavailable because the opinion has been withdrawn.

5

A. Jurisdiction

On appeal, Wausau renews its challenge to the jurisdiction of the district court. We must address such a challenge upon proper suggestion. *Silver Star Enters., Inc. v. M/V Saramacca,* 19 F.3d 1008, 1013 n. 6 (5th Cir.1994); *Sarmiento v. Texas Bd. of Veterinary Medical Examiners,* 939 F.2d 1242, 1245 (5th Cir.1991). The essence of Wausau's argument is that the statute creating the Facility provides for administrative remedies for employers that are exclusive of remedies such as the kind sought by Northwinds, and that Northwinds was required to exhaust those remedies before seeking redress in a judicial forum.

Wausau argues that Tex.Ins.Code Ann. art. 5.76-2 provides exclusive administrative remedies for employers. First, the statute grants authority for the creation of exclusive procedures for employers to secure and maintain insurance. Section 2.04(a) states:

> Subject to the approval of the [State Board of Insurance ("the Board") ], the facility may adopt, amend and repeal bylaws, rules, and regulations necessary to implement this article.

Section 2.05(b) then provides:

> After the rules adopted under Section 2.04 of this article have been approved by the board, the procedures and remedies established under this article shall be the exclusive procedure for any applicant to the facility to secure or maintain the insurance available under this article.

Second, the statute creates both general and particularized procedures through which employers may contest acts and decisions of the Facility. Section 2.08 establishes a general grievance procedure:

6

(a) An applicant for insurance, an insured, or an insurer aggrieved by an act or decision of the facility may appeal to the board not later than the 30th day after the affected party had actual notice that the act occurred or the decision was made.

....

(d) A decision of the board under this section is subject to judicial review in the manner provided in the Administrative Procedure and Texas Register Act....

The Texas Administrative Code expressly establishes a procedure for appeals to the Board. Tex.Admin.Code tit. 28, § 1.51(b). The Texas Government Code provides for the procedures for judicial review of the Board's decision. Tex.Gov't Code Ann. §§ 2001.171-.178. Specific cases of fraud and violations of the Insurance Code are referred to the Texas Workers' Compensation Commission ("the Commission") under § 2.05(d) of the statute:

The facility shall refer all cases of suspected fraud and violations of this code relating to workers' compensation insurance to the commission to:

(1) perform investigations;

(2) conduct administrative violation proceedings; and

(3) assess and collect penalties and restitution.

Section 4.05(d) authorizes a procedure for the Facility to review high EMRs at an employer's request.[3]

---

[3]As further evidence that these remedies are the exclusive remedies available to an employer, Wausau argues that § 2.12 of the statute explicitly preempts the types of claims asserted in Northwinds's complaint. This provision states:

There shall be no liability on the part of and no cause of action shall arise against the governing committee, the facility, its executive director, or any of its staff, *agents,* servants, or employees arising out of or in connection with any judgment or decision made in connection with the performance of the powers and

7

Finally, Wausau asserts that, because the Texas Legislature has prescribed the exclusive rights, procedures, and remedies available to an employer insured by the Facility, those statutory remedies must be exhausted before seeking judicial review. Wausau cites both statutory and case law to this effect. Tex.Gov't.Code Ann. § 2001.171; *Texas Catastrophe Property Ins. Ass'n v. Council of Co-Owners of Saida II Towers Condominium Ass'n,* 706 S.W.2d 644, 645-46 (Tex.1986); *Testoni v. Blue Cross & Blue Shield of Texas, Inc.,* 861 S.W.2d 387, 390 (Tex.App.—Austin 1992, no writ); *Stephanou v. Texas Medical Liab. Ins. Underwriting Ass'n (JUA),* 792

duties under this article or for recommendation or decision concerning any inspections or safety engineering investigations performed or for any recommendation or decision made in good faith.

Tex.Ins.Code Ann. art. 5.76-2, § 2.12 (emphasis added). As an agent of the Facility, Wausau asserts that this provision preempts any common law or other statutory causes of action against it in relation to its investigation and payment of claims on behalf of the Facility.

Because of the manner in which Wausau has presented this argument to this court, we decline to address it. First, we note that Wausau failed to make this argument to the district court. We do not normally consider arguments raised for the first time on appeal. *Quenzer v. United States (In re Quenzer),* 19 F.3d 163, 165 (5th Cir.1993). Also, Wausau did not even make this argument in its initial appellate brief; rather, Wausau raised it for the first time in a "response brief" that it had obtained special leave to file in answer to Northwinds's reply brief. We have held that the raising of claims for the first time in a reply brief is insufficient to preserve an argument on appeal. *Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir.) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal."), *cert. denied,* --- U.S. ----, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994). Finally, by waiting until this response brief to raise § 2.12, Wausau precluded Northwinds from offering any briefing on the subject. Accordingly, we do not consider Wausau's arguments with respect to § 2.12 as properly before this court.

8

S.W.2d 498, 500 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

Northwinds counters that the doctrines of exclusive jurisdiction and exhaustion of administrative remedies do not apply because the Facility, the Board, and the Commission are not empowered to award Northwinds monetary damages for injuries that were a consequence of past tortious actions by Wausau. Rather, Northwinds contends that the doctrine of primary jurisdiction applies and that this court can utilize the ultimate findings regarding the fraudulent nature of the contested workers' compensation claims to adjudicate Northwinds's damages claims against Wausau.

Northwinds draws an analogy between the present case and our decision in *Penny v. Southwestern Bell Tel. Co.,* 906 F.2d 183 (5th Cir.1990). In *Penny,* the plaintiffs alleged that the phone company had charged their business at telephone rates that were higher than their competitors' rates and that this disparate rate application had impeded their ability to compete and eventually forced them out of business. *Id.* at 184-85. The plaintiffs pursued administrative review of the allegedly discriminatory rates. *Id.* at 184. At the same time, however, they also brought a claim against the phone company in state district court seeking recovery under the Texas Deceptive Trade Practices Act for damages suffered by their business due to the disparate rates. *Id.* at 184-85. The phone company removed the case to federal district court on diversity grounds. *Id.* at 185. The district court dismissed the case for lack of jurisdiction because the plaintiffs had failed to exhaust

9

their administrative remedies.  *Id.*

On appeal, we held that the doctrine of exhaustion of remedies did not apply because the agency in question did not have the power to provide the remedy sought by the plaintiffs.  *Id.* at 186. First, we noted that the agency's exclusive jurisdiction over the regulation and application of rates did not necessarily translate into exclusive jurisdiction over tort claims against a phone company.  *Id.*  We then distinguished the power to regulate rates from the power to remedy past wrongs.  Specifically, we noted that the agency was not explicitly authorized by statute to grant relief for tort actions:

> [W]here the claim is not for future compliance but for damages based on past acts, the exhaustion of administrative remedies doctrine may not apply.  Th[is] notion is based on the absence of a statute authorizing the Public Utility Commission to fix or adjudicate claims for damages.

*Id.*  (internal quotations and citations omitted).  Therefore, we held that the agency did not have exclusive jurisdiction over the claims brought against the telephone company and that the plaintiffs were not required to exhaust their administrative remedies before filing an action for damages.

Instead, we found that this was an appropriate case in which to apply the doctrine of primary jurisdiction.  *Id.* at 186-87. This doctrine "comes into play whenever enforcement of the claim requires the resolution of issues [which, under a regulatory scheme, have been placed] within the special competence of an administrative body;  in such a case the judicial process is suspended pending referral of such issues to the administrative

10

body for its views." *Id.* at 187 (internal quotations and citations omitted). In particular, we found that it was appropriate to defer to the Public Utility Commission's findings regarding whether the rates charged were discriminatory because such findings were corollary to the determination of whether the phone company had violated the Deceptive Trade Practices Act. *Id.* Accordingly, we remanded the case to the district court, instructing it to hold the case in abeyance until such findings were made. *Id.* at 189.

Northwinds urges a similar result here. As in *Penny,* Northwinds notes that Tex.Ins.Code Ann. art. 5.76-2 does not vest either the Facility, the Board, or the Commission with the authority to adjudicate tort and contract claims or to award damages. Rather, these entities only have authority to regulate the payment of claims and the assignment of EMRs. Because Northwinds can only obtain the relief it seeks in a judicial forum, it contends that the district court has original jurisdiction of the case.

Northwinds further points out that it has pursued its administrative remedies with respect to the review of the claims that it alleges were mishandled. Indeed, in response to Wausau's 12(b)(1) Motion to Dismiss for Lack of Jurisdiction, Northwinds submitted evidence that it had obtained findings from the Commission that two workers that Wausau had agreed to pay had not suffered compensable on-the-job injuries. Northwinds also submitted evidence that the Texas Department of Insurance had directed Wausau to correct Northwinds's EMR to account for the

11

findings that two of the contested claims were not compensable. Because such findings are relevant to the claims that Northwinds has asserted against Wausau in this lawsuit, Northwinds suggests that the doctrine of primary jurisdiction applies; that is, the district court should hold its proceedings in abeyance until the completion of administrative findings regarding all of the alleged fraudulent workers' compensation claims, including judicial review of those administrative findings.[4] At that point, the district court can then adjudicate Northwinds's common law and statutory claims for relief.

We agree with Northwinds's assertion that *Penny* controls this case; moreover, we find Wausau's arguments to be inapposite. First, Wausau's citation of the "exclusive procedures and remedies" provision in § 2.05(b) clearly does not apply to Northwinds's claims. That section states that "the procedures and remedies established under this article shall be the exclusive procedure for any applicant to the facility *to secure or maintain the insurance available under this article*." Tex.Ins.Code Ann. art. 5.76-2, § 2.05(b) (emphasis added). Northwinds is not bringing this action "to secure or maintain" its workers' compensation coverage; rather, it seeks to recover damages for injuries it allegedly suffered due to the past actions of Wausau.

---

[4]The findings mentioned are only in the record because Northwinds submitted them in opposition to Wausau's jurisdictional challenge in the district court. It is quite possible that more findings have been made since the disposition of Wausau's 12(b)(1) motion, or even that all administrative and judicial proceedings relating to the contested claims have been completed, but such facts are outside of the record.

Second, the general grievance procedure authorized under §
2.08 does not pertain to these claims. The remedy under that
procedure is that the Board will "affirm, reverse, or modify the
act of the facility that is the subject of the appeal to the
board." *Id.* § 2.08(b). In the case *sub judice*, the "acts" of
which Northwinds complains are the payment of allegedly fraudulent
claims and the increase in its EMR. Under the statute, the most
relief that the Board and the Commission could afford Northwinds
would be to find that the claims should not have been paid and to
adjust Northwinds's EMR accordingly, which apparently has been done
in at least two instances. Still, such relief does not compensate
Northwinds for the damages it suffered as a *consequence* of the acts
being appealed. The Board and the Commission can only remedy acts
of the Facility, not the consequences of those acts.

Third, the specific procedures for addressing cases of fraud
and Insurance Code violations, and for reviewing high EMRs, also
appear to be inapplicable. With respect to fraud and code
violations, § 2.05(d) refers these cases to the Commission to
perform investigations, to conduct administrative proceedings, and
to assess and collect penalties and restitution. If these remedies
even apply to claims for damages which are the *consequence* of fraud
and code violations—and it is not clear that they do[5]—they would
not provide Northwinds with any relief because the penalties and

---

[5]More likely, the provision for restitution applies to
*employees* who have received benefits for claims which are
subsequently determined to be fraudulent, rather than to
servicing companies who have improperly paid claims to the
detriment of employers.

13

restitution do not redound to the benefit of the aggrieved party. Rather, any restitution collected is deposited in the rejected risk fund. *Id.* § 2.05(f). Any penalties collected are credited to the account of the Commission. *Id.* § 2.05(g). Also, the provision for review of high EMRs apparently only contemplates that the Facility will exclude an employer from the "extraordinary risk provisions of the rating plan" in appropriate cases. *Id.* § 4.05(d).

Finally, there is no statutory provision that expressly gives the Facility, the Board, or the Commission the authority to adjudicate common law or statutory tort actions or to award damages. By contrast, the cases cited by Wausau that required exhaustion of administrative remedies all involved agencies vested with the authority to adjudicate the claims asserted and to award the relief requested.

Our analysis of the statute suggests that this case falls squarely within *Penny* 's holding that, where an agency "has no power to provide the remedy sought, then, exclusive jurisdiction cannot rest in that body." *Penny,* 906 F.2d at 186. Moreover, the claims asserted by Northwinds, which are in the nature of common law tort and statutory remedies for damages, are cognizable in a federal district court in a diversity case. Accordingly, we hold that the district court has original jurisdiction of the claims asserted by Northwinds. *See id.*

Although we hold that the district court properly exercised jurisdiction over these claims, we must still consider whether application of the primary jurisdiction doctrine is appropriate in

14

this case. In *Penny,* we held that this doctrine applies where: (1) the court has original jurisdiction over the claim before it; (2) the adjudication of that claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body. *See id.* at 187.

We have already held that the district court has original jurisdiction in this case. As to the second prong, it is clear that Northwinds's damages claims against Wausau depend upon a finding that the contested workers' compensation claims were fraudulent and that Wausau improperly paid these claims without investigating them. If the claims were properly paid, Northwinds would have no ground for relief against Wausau. With respect to the third prong, our analysis of the relevant provisions of the Texas Insurance Code reveals that the Texas Legislature has committed the making of such findings to the Facility, the Board, and the Commission. These findings in turn are subject to judicial review in Travis County district court. Tex.Gov't Code Ann. § 2001.176; Tex.Ins.Code Ann. art. 5.76-2, § 2.08(d). Because the Texas Legislature has vested these entities with the authority to make these findings, and because the special expertise of these entities makes them uniquely qualified to make such findings, it is more appropriate that the district court defer to this procedure rather than to make these necessary determinations in the first instance. Specifically, under the doctrine of primary jurisdiction

15

as outlined in *Penny,* the district court should have abstained from resolving the damages claims asserted by Northwinds until the administrative and judicial review procedures prescribed by the Texas Insurance Code had yielded final determinations on the issue of whether Wausau improperly paid the contested workers' compensation claims. Because the district court did not do this, we remand the case to the district court with instructions that it hold the case in abeyance until these final determinations have been made.

B. The Summary Judgment

Of course, it would be futile to remand this case to the district court with instructions to hold the case in abeyance if summary judgment were appropriate regardless of the outcome of the prescribed administrative and judicial procedures. Because subsequent developments in Texas case law warrant a partial reversal of the summary judgment, however, remand is the proper result.

After the district court granted Wausau's motion for summary judgment, the Texas Court of Appeals withdrew its opinion in *Maintenance, Inc. v. ITT Hartford Group, Inc.,* No. 06-94-00046-CV, 1994 WL 575769 (Tex.App.—Texarkana Oct. 21, 1994) (not designated for publication), and superseded it with another, *Maintenance, Inc. v. ITT Hartford Group, Inc.,* No. 06-94-00046-CV, 1994 WL 668038 (Tex.App.—Texarkana, Dec. 1, 1994) (not designated for publication). This second *Maintenance* opinion was also later withdrawn and superseded by a third *Maintenance* opinion,

16

*Maintenance, Inc. v. ITT Hartford Group, Inc.,* 895 S.W.2d 816 (Tex.App.—Texarkana 1995, writ denied). This third opinion changed in part the substantive holding relied upon by the district court in ruling on Wausau's summary judgment motion. The Texas Court of Appeals continues to hold that an employer insured through the Facility has no cause of action against a servicing company for breach of the duty of good faith and fair dealing because the servicing company is not the employer's insurer. *Maintenance,* 895 S.W.2d at 819. However, that court now holds that a servicing company may be liable to an insured employer for negligence or violations of the Deceptive Trade Practices Act or the Insurance Code. *Id.* The court's rationale was that "[a]n agent may be liable for its own acts of negligence or fraud committed in performing a contract for its principal if those negligent or fraudulent acts cause reasonably foreseeable harm to a third party." *Id.* (citing *Whitson Co. v. Bluff Creek Oil Co.,* 278 S.W.2d 339 (Tex.App.—Fort Worth 1955), *aff'd,* 156 Tex. 139, 293 S.W.2d 488 (1956)).

Because this third *Maintenance* opinion renewed the Texas Court of Appeals' holding that an employer does not have a cause of action against a servicing company for breach of the duty of good faith and fair dealing, counsel for Northwinds stated at oral argument that he was abandoning the appeal of the summary judgment in this regard. Accordingly, we affirm the district court's order granting summary judgment to Wausau on this claim.

With respect to Northwinds's other theories of recover, the

sole basis for Wausau's summary judgment motion was that such claims did not lie against a servicing company. Also, the district court relied exclusively on the now-withdrawn original *Maintenance* opinion in granting summary judgment to Wausau on Northwinds's other claims. *Maintenance* now holds, however, that those claims are viable against a servicing company. Consequently, we think it is appropriate to reverse the summary judgment order as to those claims and to remand to the district court for further proceedings, with the caveat that the court should suspend such proceedings until the relevant administrative and judicial findings described in Part II.A. have been made.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment to Wausau with respect to Northwinds's claim for breach of the duty of good faith and fair dealing; however, we REVERSE the district court's order granting summary judgment to Wausau with respect to Northwinds's other theories of recovery and REMAND for further proceedings with instructions that the court hold the case in abeyance until the administrative and judicial review of the payment of the contested workers' compensation claims is complete.