**NORTHWINDS ABATEMENT, INC., Plaintiff,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, A Mutual Company, Defendant.**

**No. Civ.A. H–93–1776.**

United States District Court, S.D. Texas.

Sept. 28, 1999.

Andrew J. Mytelka, John A. Buckley, Jr., Greer Herz & Adams, Galveston, TX, for Northwinds Abatement Inc, plaintiff.

Michael Phillips, Phillips and Akers, Houston, TX, for Employers Ins. of Wausau, defendant.

Edward Joseph Howlett, II, Kirklin Boudreaux Leonard & Howlett, Houston, TX, for Arco Chemical Co., movant.

Michael Phillips, Phillips and Akers, Houston, TX, for Employers Ins. of Wausau, counter-claimant.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court are Plaintiff Northwinds Abatement, Inc.'s ("Northwinds") Motion for Partial Summary Judgment (# 194) and Motion for Ruling on Completion of State Court Review (# 201). The latter motion incorporates Northwinds' prior motion for partial summary judgment. Having reviewed the motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Northwinds' Motion for Ruling on Completion of State Court Review should be granted, rendering its Motion for Partial Summary Judgment moot.

### I. *Background*

This action arises out of a dispute concerning the payment of workers' compensation benefits to six former employees of Northwinds—Jose Ochoa ("Ochoa"), Emigdio Perez ("Perez"), Oscar Martinez ("Martinez"), Francisco Rocha ("Rocha"), Auscencion Hernandez ("Hernandez"), and Elijah Mitchell ("Mitchell"). Northwinds purchased workers' compensation insurance through the Texas Workers' Compensation Insurance Facility ("the Facility") for annual terms commencing in April 1989 and ending in April 1993. Defendant Employers Insurance of Wausau ("Wausau") was the servicing agent on those policies, with responsibility for investigating, reporting, and paying claims, inspecting risks for classification purposes, and conducting legal support as required by the policy. *See* Tex.Ins.Code Ann. § 4.08(c) (West 1992). Northwinds contends that Wausau failed to investigate the legitimacy of these employees' claims, which would have revealed their fraudulent nature, resulting in the wrongful payment of workers' compensation benefits to the six employees. Northwinds maintains that Wausau's payment of these claims caused its Experience Modifier Rating ("EMR") to be improperly inflated such that it was unable to compete for asbestos removal jobs.

Through the establishment of a detailed administrative process, the Texas Legislature has committed the resolution of disputes related to workers' compensation, including the determination of the

merits of an employee's claim for benefits, to the Texas Workers' Compensation Commission ("TWCC"). *See* Tex.Lab.Code Ann. §§ 410.001–.258 (formerly Tex.Rev. Civ.Stat.Ann. arts. 8308–1.01–11.10 (West 1992)); *Bray v. Utica Mut. Ins. Co.*, No. Civ.A. 3:98–CV–0544–G, 1998 WL 574768, at \*2 (N.D.Tex. Aug.26, 1998); *Golden v. Employers Ins. of Wausau*, 981 F.Supp. 467, 474 (S.D.Tex.1997). The TWCC routinely makes decisions regarding the compensability of alleged workplace injuries and investigates allegations of fraud with respect to such claims, thereby developing specialized expertise in areas central to this dispute. *See* Tex.Lab.Code Ann. §§ 410.021–.034, 410.151–.169, 410.201–.208 (formerly Tex.Rev.Civ.Stat.Ann. art. 8308–6.11–.15, 8308–6.31–.34, 8308–6.41–.45 (West 1992)); Tex.Ins.Code Ann. art. 5.76–2, § 2.05(d) (West 1992); *Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 69 F.3d 1304, 1311 (5th Cir.1995); *Bray*, 1998 WL 574768, at \*2; *Golden*, 981 F.Supp. at 474. Because the TWCC is uniquely qualified to make determinations on the questions of compensability and fraudulent claims, the doctrine of primary jurisdiction comes into play. *See Northwinds Abatement, Inc.*, 69 F.3d at 1311; *Bray*, 1998 WL 574768, at \*2; *Golden*, 981 F.Supp. at 474–76; *see also Storebrand Ins. Co., U.K., Ltd. v. Employers Ins. of Wausau*, 139 F.3d 1052, 1055 (5th Cir. 1998). Under the doctrine of primary jurisdiction, a court may refrain from exercising its jurisdiction until after an administrative agency has determined threshold questions raised in the lawsuit. *See Penny v. Southwestern Bell Tel. Co.*, 906 F.2d 183, 187 (5th Cir.1990); *Bray*, 1998 WL 574768, at \*2; *Golden*, 981 F.Supp. at 475.

▇▇▇ "[T]he primary jurisdiction doctrine ... applies where: (1) the court has original jurisdiction over the claim before it; (2) the adjudication of that claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the

resolution of those issues or the making of those findings to an administrative body." *Northwinds Abatement, Inc.*, 69 F.3d at 1311 (citing *Penny*, 906 F.2d at 187). Texas courts also recognize the doctrine. "Primary jurisdiction is a judicially created doctrine of abstention, whereby a court that has jurisdiction over a matter nonetheless defers to an administrative agency for an initial decision on questions of fact or law within the peculiar competence of the agency." *In re Luby's Cafeterias, Inc.*, 979 S.W.2d 813, 816 (Tex.App.—Houston [14th Dist.] 1998, no pet.) (citing *State Bar v. McGee*, 972 S.W.2d 770, 772 (Tex.App.—Corpus Christi 1998, no pet.)). "The purpose behind primary jurisdiction is to assure that the administrative agency will not be bypassed in a matter which has been especially committed to it by the legislature." *In re Luby's Cafeterias, Inc.*, 979 S.W.2d at 816 (citing *American Pawn & Jewelry, Inc. v. Kayal*, 923 S.W.2d 670, 673 (Tex.App.—Corpus Christi 1996, writ denied)). Deference to an administrative proceeding is particularly appropriate in situations where the resolution of the case would be aided by an initial determination of the preliminary questions by the administrative agency. *See Northwinds Abatement, Inc.*, 69 F.3d at 1311; *Penny*, 906 F.2d at 187; *Bray*, 1998 WL 574768, at \*2.

On appeal of this court's prior decision granting summary judgment to Wausau, the Fifth Circuit, on December 5, 1995, held that, pursuant to the doctrine of primary jurisdiction, the court:

> should have abstained from resolving the damages claims asserted by Northwinds until the administrative and judicial review procedures prescribed by the Texas Insurance Code had yielded final determinations on the issue of whether Wausau improperly paid the contested workers' compensation claims.

*Northwinds Abatement, Inc.*, 69 F.3d at 1311 (citing *Penny*, 906 F.2d at 187–89). The Fifth Circuit remanded the case for further proceedings with instructions that this court "hold the case in abeyance until

the administrative and judicial review of the payment of the contested workers' compensation claims is complete." *Id.* at 1312.

In accordance with the Fifth Circuit's directive, the court issued orders on May 1, 1997, and November 10, 1998, requiring the parties to pursue the administrative and judicial review procedures prescribed by the Texas Insurance Code and the Texas Labor Code to obtain final determinations on the issues of whether the contested workers' compensation claims were fraudulent and whether Wausau improperly paid the claims. In the instant motions, Northwinds asserts that it has complied with the mandates of the Fifth Circuit's opinion as well as this court's orders and that the case is ready to proceed to trial in federal court. In addition, Northwinds contends that it has completed the administrative and judicial review processes concerning the calculation of Northwinds' EMR by the Facility.

## II. *Analysis*

### A. *Compensability*

Initially, Northwinds maintains that it has exhausted the available state administrative and judicial review procedures regarding the compensability issue. The TWCC contains a "division of hearings" which conducts "benefit review conferences, contested case hearings, arbitration, and appeals within the commission related to workers' compensation claims." TEX. LAB.CODE ANN. §§ 402.021, 410.004 (formerly TEX.REV.CIV.STAT.ANN. arts. 8308–2.12, 8308–6.02). In essence, the division of hearings is required, upon proper application, to review whether payment of a claim was proper by determining whether the employee suffered an injury compensable under the workers' compensation statute. *See id.* at §§ 410.001–.258 (formerly TEX.REV.CIV.STAT.ANN. arts. 8308–2.12, 8308–6.02, 8308–6.15).

"The first tier in the process to contest the compensability of a claim is a 'benefit review conference' conducted by a 'benefit review officer.'" *In re Texas Workers' Compensation Ins. Fund,* 995 S.W.2d 335, 336–37 (Tex.App.—Houston [1st Dist.] 1999), (no pet. h.) (quoting *Subsequent Injury Fund v. Service Lloyds Ins. Co.,* 961 S.W.2d 673, 675 (Tex.App.—Houston [1st Dist.] 1998), (pet. denied) (citing TEX.LAB. CODE ANN. §§ 410.021–.034)). At that stage, disputes are resolved informally. *See id.* (citing *Subsequent Injury Fund,* 961 S.W.2d at 675 (citing TEX.LAB.CODE ANN. § 410.104)); *see also* 28 TEX.ADMIN.CODE ANN. § 141.5 (formerly TEX.REV. CIV.STAT.ANN. art. 8308–6.11). In the benefit review conference, "[t]he benefit review officer has the authority to order or decline to order benefits." *In re Texas Workers' Compensation Ins. Fund,* 995 S.W.2d at 336–37 (citing *Subsequent Injury Fund,* 961 S.W.2d at 675 (citing TEX. LAB.CODE ANN. § 410.032)). "When a party fails to attend a benefit review conference without good cause, as determined by the benefit review officer, the benefit review officer: (1) may hold the conference as scheduled; and (2) may write a Class D administrative violation, with a penalty not to exceed $500." 28 TEX.ADMIN.CODE ANN. § 141.3 (formerly TEX.REV.CIV.STAT.ANN. art. 8308–6.12(e)). "If all disputed issues are not resolved at the benefit review conference, no later than the fifth day after the close of the benefit review conference, the benefit review officer shall submit a written report ... including any signed agreement, and a copy of any interlocutory order entered, to the director of the hearings division." *Id.* at § 141.7 (formerly TEX.REV.CIV.STAT.ANN. art. 8308–6.34(g)).

If the matter is not resolved at the benefit review conference, a "party may seek relief at a contested case hearing" presided over by a hearing officer. *See In re Texas Workers' Compensation Ins. Fund,* 995 S.W.2d at 336 (citing *Subsequent Injury Fund,* 961 S.W.2d at 675 (citing TEX.LAB.CODE ANN. §§ 410.151–.169)); *see In re Luby's Cafeterias, Inc.,* 979 S.W.2d at 814; *Cardenas v. Continental Ins. Co.,* 960 S.W.2d 401, 402 (1998)

(pet. denied); *see also Golden,* 981 F.Supp. at 471. "Failure to attend a benefit contested case hearing without good cause, as determined by the hearing officer, is a Class C administrative violation, with a penalty not to exceed $1,000." 28 TEX.ADMIN.CODE ANN. § 141.7 (formerly TEX.REV. CIV.STAT.ANN. art. 8308–6.34(f)). After the record closes, the hearing officer issues a decision on benefits. *See id.* at § 142.16 (formerly TEX.REV.CIV.STAT.ANN. art. 8308– 6.34). "A decision regarding benefits not appealed to the appeals panel ... becomes final on the 16th day after the date received from the division of hearings." *Id.;* see TEX.LAB.CODE ANN. § 410.169 (formerly TEX.REV.CIV.STAT.ANN. art. 8308–6.34); *see also Lumbermens Mut. Cas. Co. v. Manasco,* 971 S.W.2d 60, 64 (Tex.1998).

"At the third tier of the disposition process, a party may seek review by an administrative appeals panel." In re Texas Workers' Compensation Ins. Fund, 995 S.W.2d at 336 (citing *Subsequent Injury Fund,* 961 S.W.2d at 675 (citing TEX.LAB. CODE ANN. §§ 410.201–.208)); *see* 28 TEX.ADMIN.CODE ANN. § 143.3 (formerly TEX.REV.CIV.STAT.ANN. art. 8308–6.41). To appeal the decision of a hearing officer; a party must "file a written request for appeal with the appeals panel not later than the 15th day after the date on which the decision of the hearing officer is received from the division." TEX.LAB.CODE ANN. § 410.202 (formerly TEX.REV.CIV.STAT.ANN. art. 8308–6.41); *see* 28 TEX.ADMIN.CODE ANN. § 143.3(a)(3) (formerly TEX.REV.CIV. STAT.ANN. art. 8308–6.41); *see also Golden,* 981 F.Supp. at 471; *Lumbermens Mut. Cas. Co.,* 971 S.W.2d at 62; *Morales v. Employers Cas. Co.,* 897 S.W.2d 866, 870 (Tex.App.—San Antonio 1995, writ denied). "Not later than the 30th day after the date the response was filed with the commission, the appeals panel will issue its written decision, and file a copy with the director of the hearings division." 28 TEX.ADMIN.CODE ANN. § 143.5(a) (formerly TEX.REV.CIV.STAT.ANN. art. 8308–6.42). "If the appeals panel does not issue a written decision by the thirtieth day after the date

the response was filed with the commission, the hearing officer's decision becomes final, constitutes the decision of the appeals panel, and, for the purpose of establishing the time for seeking judicial review, is deemed filed with the director of the hearings division on that day." *Id.* at § 143.5(b) (formerly TEX.REV.CIV.STAT.ANN. art. 8308–6.42). "A decision of the appeals panel that is not appealed for judicial review ... becomes final on the 41st day after the date the decision was filed, or deemed filed, with the director of the hearings division." *Id.* at § 143.5(d) (formerly TEX.REV.CIV.STAT.ANN. art. 8308–6.61).

Finally, an aggrieved party may seek judicial review of the appeals panel decision. *See In re Texas Workers' Compensation Ins. Fund,* 995 S.W.2d at 337 (citing TEX.LAB.CODE ANN. §§ 410.251–.308). "[T]he legislature [has] granted a right of judicial review only to parties who have exhausted their administrative remedies and are 'aggrieved by a final decision of the appeals panel.'" *Continental Cas. Ins. Co. v. Functional Restoration Assocs.,* 964 S.W.2d 776, 779 (Tex.App.—Austin 1998, pet. granted) (quoting TEX.LAB.CODE ANN. § 410.251). "A party may seek judicial review by filing suit not later than the 40th day after the date on which the decision of the appeals panel was filed with the division." TEX.LAB.CODE ANN. § 410.252 (formerly TEX.REV.CIV.STAT.ANN. art. 8308– 6.61); *see Morales,* 897 S.W.2d at 868. "[T]he 40 day filing requirement is mandatory and jurisdictional." *Id.*

Here, the record reflects that Northwinds commenced the administrative review process by contesting the compensability of the claims for benefits asserted by Ochoa (allegedly injured on September 25, 1991), Perez (allegedly injured on October 2, 1991), Martinez (allegedly injured on October 14, 1991), Rocha (allegedly injured on October 14, 1991), Hernandez (allegedly injured on December 19, 1991), and Mitchell (allegedly injured on June 5, 1992) at six separate benefit review conferences.

While the record does not specifically disclose what transpired at these conferences, it is apparent that the parties were unable to resolve their differences. With regard to Mitchell, Scott D. Daniel, counsel for Northwinds, stated in an affidavit:

> I attended the benefit review conference conducted by the Texas Workers' Compensation Commission on December 7, 1995, in Bryan, Texas, concerning the workers' compensation claim of Elijah Mitchell.... The claimant, Elijah Mitchell, did not appear at the scheduled time and place. I recall that the hearing officer ruled that, inasmuch as benefits were no longer being paid to Mr. Mitchell, the benefit review conference would serve no purpose unless Mr. Mitchell were present. The hearing officer made no findings and ordered that there would be no further hearings in the matter absent Mr. Mitchell.

At the second tier of administrative review, Northwinds initiated contested case hearings regarding the claims of Ochoa, Perez, Martinez, Rocha, and Hernandez. Northwinds contends that it did not seek a contested case hearing as to Mitchell's claim, who was no longer receiving benefits, because the benefit review officer had declined to conduct a conference and had made no findings. The hearing officers' written decisions on the other contested claims were issued on the following dates: Ochoa on March 29, 1993; Perez on June 7, 1993; Martinez on April 17, 1997; Rocha on January 14, 1997; and Hernandez on December 2, 1993. In their decisions, the hearing officers made the following findings: "[Ochoa] failed to establish by a preponderance of the evidence that he suffered a back injury that arose out of and in the course and scope of his employment on September 25, 1991 or September 26, 1991;" "Perez did not suffer an injury during the course and scope of his employment;" "[Martinez] failed to meet his burden of proof to show that he sustained an injury;" "[Rocha] has not shown by a preponderance of the evidence that he suf-

fered an injury in the course and scope of his employment;" and "[Hernandez] failed to establish by a preponderance of the evidence that he suffered a back injury." Nevertheless, with regard to four of the former employees, the hearing officers found that Northwinds had failed to use reasonable diligence by unreasonably delaying its actions to contest compensability and that the claimants remained eligible for benefits. Thus, with the exception of Ochoa, the hearing officers ordered that the claimants' benefits be continued. Northwinds contends, however, that it did not learn until July 10, 1992, that the Rocha and Martinez claims had been paid.

At the final stage of administrative review, Northwinds and/or Wausau appealed the hearing officers' decisions regarding the compensability of the claims brought by Perez, Rocha, Martinez, and Hernandez. Neither Northwinds nor Wausau sought further administrative review of Ochoa's claim. The appellate panels issued their decisions on the following dates: Perez on October 25, 1996; Rocha on March 24, 1997; Martinez on June 30, 1997; and Hernandez on February 8, 1994. In each case, the appellate panel declined to overturn the hearing officer's decision.

Finally, Wausau sought judicial review of the appeals panels' decisions regarding Perez, Rocha, and Martinez. Northwinds filed a separate action seeking judicial review of the administrative findings regarding Martinez. Northwinds and Wausau's actions were consolidated in the 215th District Court of Harris County, Texas, under Cause No. 96–61205. On July 6, 1998, the state court proceeding was dismissed upon the district court's entry of an agreed final order providing, in part:

> The parties through their respective attorneys of record expressly stated to the Court that, in the interest of judicial economy and to avoid the unnecessary duplication of legal efforts and inconsistent rulings from state and federal courts, the parties have agreed to submit all claims and causes of action that

were asserted in these consolidated cases to the United States Magistrate Judge in C.A. No. H–93–1776; *Northwinds Abatement, Inc. v. Employers Insurance of Wausau;* in the United States District Court for the Southern District of Texas, Houston Division.

At a hearing before this court on October 31, 1998, counsel for Wausau conceded that, with regard to compensability, the agreed judgment in state court, "is sufficient for exhaustion of remedies on that side of the equation."

█ Nonetheless, Wausau now contends that Northwinds has not adequately exhausted its state remedies by failing to obtain "final determinations" on the issue of compensability as required by the Fifth Circuit's directive and this court's orders. The Supreme Court and the Fifth Circuit have made clear, however, that after ordering a case to be held in abeyance pending administrative review in accordance with the primary jurisdiction doctrine, a federal trial court need not await administrative findings indefinitely, but only for a reasonable period of time. *See Reiter v. Cooper,* 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); *Penny,* 906 F.2d at 188–89; *Wagner & Brown v. ANR Pipeline Co.,* 837 F.2d 199, 206 (5th Cir. 1988); *Golden,* 981 F.Supp. at 476. "[P]rimary jurisdiction ... is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties *reasonable* opportunity to seek an administrative ruling." *Reiter,* 507 U.S. at 268, 113 S.Ct. 1213 (emphasis added) (citing *United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)). In *Wagner & Brown,* after acknowledging past inaction on the part of the Federal Energy Regulatory Commission ("FERC") on the issues in dispute, the Fifth Circuit instructed the district court to stay the proceedings for

only 180 days to afford FERC an opportunity to rule on ANR's complaint. *See* 837 F.2d at 206. The court added, "[i]f no such ruling is forthcoming within that time ..., then the district court should proceed to adjudicate the rights of the parties without further deference to the expertise of FERC." *Id.*

In *Penny,* a case contesting allegedly discriminatory telephone rates, the Fifth Circuit determined that, although the federal district court had concurrent jurisdiction, under the doctrine of primary jurisdiction, it should refrain from exercising its jurisdiction pending the parties' pursuit of administrative review before the Texas Public Utilities Commission ("PUC"). *See* 906 F.2d at 187. The court indicated, however, that the period allowed for state review is not open-ended:

> In any event, if the PUC chooses not to make a finding as to discrimination, the case will simply return to the district court. By remanding the case to be held in abeyance until the PUC has a reasonable period of time to consider the case, we do not ask the PUC to do anything it finds outside its authority or discretion. It can hang up on the call if it wishes. We only make sure that the PUC is not bypassed in the decision-making process regarding the discrimination issue.

*Id.* at 188–89; *see Golden,* 981 F.Supp. at 476. Here, the TWCC obviously decided to "hang up" on Northwinds' call, while the parties agreed to sever the connection with the state district court, opting instead to place a collect, person-to-person call to this court. Hence, Northwinds cannot be said to have ignored or bypassed the available avenues of review.

█ Furthermore, Northwinds need not obtain a final judgment disposing of all the claims or the case as a whole in order to satisfy the requirements of primary jurisdiction. *See Penny,* 906 F.2d at 188–89; *Wagner & Brown,* 837 F.2d at 206; *see also Employers Reinsurance Corp. v. Holt,* 410 S.W.2d 633, 634–36 (Tex.1966);

*cf. Texas General Indem. Co. v. Strait,* 673 S.W.2d 334, 336 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Indeed, an agency's complete failure to act may constitute a final determination under the doctrine of primary jurisdiction. *See Penny,* 906 F.2d at 188–89; *Wagner & Brown,* 837 F.2d at 206; *Golden,* 981 F.Supp. at 476. Moreover, in situations where "judicial review is not normally available until the administrative proceedings have been exhausted, '[plaintiffs] may by-pass the administrative process where exhaustion would be futile or inadequate.'" *Gardner v. School Bd. Caddo Parish,* 958 F.2d 108, 111–12 (5th Cir.1992) (quoting *Honig v. Doe,* 484 U.S. 305, 327, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)); *see Hall v. National Gypsum Co.,* 105 F.3d 225, 232 (5th Cir. 1997); *Dunn McCampbell Royalty Interest, Inc. v. National Park Service,* 964 F.Supp. 1125, 1131 (S.D.Tex.1995), *aff'd,* 112 F.3d 1283 (5th Cir.1997). The primary jurisdiction doctrine merely assures that state agencies with jurisdiction over the matters in dispute will not be bypassed in the decision-making process. *See Penny,* 906 F.2d at 189; *Foree v. Crown Central Petroleum Corp.,* 431 S.W.2d 312, 316–17 (Tex.1968); *In re Luby's Cafeterias, Inc.,* 979 S.W.2d at 816; *American Pawn & Jewelry, Inc.,* 923 S.W.2d at 673. In this instance, the applicable state agencies were not bypassed, but, in their discretion, declined to make specific factual determinations on all of the matters at issue in this action. Thus, state administrative and judicial review of the compensability issue is complete.

### B. *Fraud*

Northwinds further asserts that it has exhausted its available state remedies with regard to the fraud issue. As to Northwinds' fraud claim, the Texas Insurance Code in effect during the applicable time period required the Facility to refer cases of suspected fraud relating to workers' compensation insurance to the TWCC. "Specific cases of fraud and violations of the Insurance Code are referred to the Texas Workers" Compensation Commission ('the Commission') under § 2.05(d) of the statute:

> The facility shall refer all cases of suspected fraud and violations of this code relating to workers' compensation insurance to the commission to:
>
> (1) perform investigations;
>
> (2) conduct administrative violation proceedings; and
>
> (3) assess and collect penalties and restitution.

*Northwinds Abatement, Inc.,* 69 F.3d at 1308 (citing Tex.Ins.Code Ann. art. 5.76–2, § 2.05(d)). Nonetheless, the Texas Supreme Court has expressly stated that the TWCC does not exist to provide a remedy for fraud and bad faith actions. *See Golden,* 981 F.Supp. at 473 (citing *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 612–13 (Tex.1996))

The TWCC includes a "division of compliance and practices" which "monitors compliance with commission rules and other laws." Tex.Lab.Code Ann. §§ 402.021, 414.002 (formerly Tex.Rev.Civ.Stat.Ann. arts. 8308–2.12, 8308–9.01). "Any person may request the initiation of administrative violation proceedings by filing a written allegation with the director of the division of compliance and practices." *Id.* at § 415.031 (formerly Tex.Rev.Civ.Stat.Ann. art. 8308–10.31). "For further investigation or the institution of appropriate proceedings, the [division of compliance and practices] may refer the persons involved in a case subject to an investigation to: (1) the division of hearings; or (2) other appropriate authorities, including licensing agencies, district and county attorneys, or the attorney general." *Id.* at § 414.006 (formerly Tex.Rev.Civ.Stat.Ann. art. 8308–9.06). "If investigation by the division of compliance and practices indicates that an administrative violation has occurred, the division shall notify the person alleged to have committed the violation in writing of: (1) the charge; (2) the proposed penalty; (3) the right to consent to the charge and

the penalty; and (4) the right to request a hearing." *Id.* at § 415.032(a) (formerly TEX.REV.CIV.STAT.ANN. ART. 8308–10.32). "If, without good cause, a charged party fails to respond ..., the penalty is due and the commission shall initiate enforcement proceedings." *Id.* at § 415.033 (formerly TEX.REV.CIV.STAT.ANN. ART. 8308–10.34). Thus, the division of compliance and practices has the authority to investigate and, at its discretion, prosecute individuals who file fraudulent claims.

To comply with the Fifth Circuit's directive and this court's orders, Northwinds referred the contested claims of its six former employees to the compliance and practices division of the TWCC. By letters dated January 14, 1998, Eileen V. Atkinson ("Atkinson"), an investigator with the division, advised counsel for Northwinds that, after completing a preliminary investigation, "no determination has been made, [sic] if a violation of the Texas Workers['] Compensation Act/Rules or other state law was committed" and that "no further investigation will be conducted at this time" of the Ochoa, Martinez, Rocha, Hernandez, and Mitchell claims. Atkinson noted that "the Commission must set priorities and select cases to pursue which will have the greatest positive impact on the workers['] compensation system." On November 25, 1998, Northwinds wrote to Leonard Riley, Jr. ("Riley"), Director of the TWCC, explaining that "Northwinds has attempted to obtain formal findings concerning the allegations of fraud against its former employees." Citing the court's order seeking more conclusive findings, Northwinds requested Riley to provide a formal notification that no additional factual findings could be obtained.

After receiving no response from Riley, Northwinds filed a petition for declaratory relief against the TWCC in the 98th Judicial District Court of Travis County, Texas, on December 15, 1998. The petition sought a declaration that, with respect to the claims of Ochoa, Martinez, Rocha, Hernandez, and Mitchell, the contested work-

ers' compensation claims were fraudulent and that the letters from Atkinson were the only "final factual determinations" that Northwinds would receive. Northwinds also sought an order requiring the compliance and practices division to communicate its findings regarding Perez's claim. Subsequently, Northwinds received a letter from Riley dated December 10, 1998, addressing the status of the six workers' compensation claims about which Northwinds had inquired on November 25. Riley wrote, "This is to certify that based on the information currently available, all administrative proceedings of our Compliance and Practice Division involving [Hernandez, Rocha, Martinez, Ochoa, and Mitchell] have been finalized," pointing out that the "administrative action involving [Perez] is still pending."

On January 25, 1999, in response to separate inquiries from Northwinds and Wausau's counsel, Riley sent another letter explaining the status of the six claims. He advised counsel that:

the Compliance and Practice Division has completed and finalized action on complaints involving Auscendio [sic] Hernandez, Francisco Rocha, Oscar Martinez, Jose Ochoa and Elijah Mitchell. Based on all current available information, the Commission will not initiate any administrative or other proceedings or referral under the Workers' Compensation Act, Texas Labor Code, Chapter[s] 414 & 415 as regards theses [sic] five individuals and the complaints against them. Under the Act, and Commission rules, this non-referral is not subject to review. If, at anytime in the future, the Commission receives substantial, credible new information of fraudulent conduct or activities, any or all of these closed cases could be reactivated.

In the case concerning Mr. Emigdio Perez, the Commission has issued a notice of possible administrative violation indicating the Commission's intent to assess an administrative penalty and seek

re-payment of workers' compensation benefits from Mr. Perez in accordance with the Act. Chapter 415. Pursuant to that chapter and Commission rules, once Mr. Perez receives actual notice, he has 20 days to either accept the Commission's initial determination or make a written request for a hearing. If dissatisfied with the result of this hearing, Mr. Perez may file suit in Travis County District Court for judicial review, as provided by the Act, Chapter 415. Under the Act and Commission rules only Mr. Perez, as the charged party, may participate in the hearing or seek judicial review of an adverse decision. . . .

On March 12, 1999, the district court in Travis County issued an opinion and order dismissing Northwinds' action for declaratory judgment. The bulk of the court's opinion quotes Riley's January 25, 1999, letter, stating, in part:

The Court finds that the Texas Workers' Compensation Commission has determined, as stated in a letter dated 1/25/99 from Mr. Leonard W. Riley, Jr., its Executive Director, "the Compliance and Practice Division has completed and finalized action on complaints involving Auscendio [sic] Hernandez, Francisco Rocha, Oscar Martinez, Jose Ochoa and Elijah Mitchell. . . ." This determination by the Commission is not subject to review by this Court.

The Court notes also that, in regard to the workers' compensation claim of Emigdio Perez, the Commission issued a notice of administrative violation indicating the Commission's intent to assess an administrative penalty and seek repayment of workers' compensation benefits paid to Mr. Perez, who may request a hearing regarding the Commission's determination. If dissatisfied with the results of the hearing, Mr. Perez may file suit in Travis County District Court for judicial review. As the charged party, only Mr. Perez may participate in the hearing or seek judicial review of an adverse decision. Tex.Lab.Code Ann. §§ 415.032–415.035 (Vernon 1996).

The court concluded that, "[b]ecause this Court does not have jurisdiction to grant the declaratory relief requested by Northwinds," dismissal was appropriate.

■ Now, Wausau contends that Northwinds failed to obtain "final determinations" on the issue of fraud. As with the compensability issue, however, Northwinds' efforts before the TWCC's compliance and practices division and in state court in Travis County are sufficient to satisfy the doctrine of primary jurisdiction. *See Reiter*, 507 U.S. at 268, 113 S.Ct. 1213; *Penny*, 906 F.2d at 188–89; *Wagner & Brown*, 837 F.2d at 206; *Golden*, 981 F.Supp. at 476. Thus, the compliance and practices division did not merely decide to "hang up" on Northwinds, it chose instead to take more important calls, while the district court in Travis County refused even to answer the phone. dismissing Northwinds' call as a wrong number.

Again, Northwinds did not bypass the state review process. Rather, all avenues of administrative review of the fraud issue were foreclosed to Northwinds. Faced with its refusal to act, neither Northwinds, nor Wausau, nor this court can command specific findings from the division of compliance and practices on the issue of fraud. *See Foree*, 431 S.W.2d at 316–17 (finding that an administrative agency does not "act as a mere agent of the trial court"); *see also Penny*, 906 F.2d at 188. Moreover, at this juncture, the court need not countenance further delay by awaiting the TWCC's decision on Perez's claim. *See Penny*, 906 F.2d at 188–89; *Wagner & Brown*, 837 F.2d at 206. Therefore, state administrative and judicial review of the fraud issue is complete.

### C. *Experience Modifier Rating*

Finally, Northwinds contends that it has exhausted its remedies regarding the Facility's allegedly improper calculation of Northwinds' EMR on the basis of noncompensable injuries. "Section 4.05(d) [of

the Insurance Code] authorize[d] a procedure for the Facility to review high EMRs at an employer's request." *Northwinds Abatement, Inc.*, 69 F.3d at 1308. Specifically, this section provides:

The facility shall create a procedure to review, on request of an employer, the application of the rating plan to an employer identified as an extraordinary risk under Subsection (c) of this section. The facility may exclude the employer from the extraordinary risk provisions of the rating plan if:

(1) the facility determines that the employer's actual incurred losses exceeded expected losses due to injuries resulting from acts of God or actions of third parties unrelated to the workplace; or

(2) the employer has:

(A) had a material change in ownership of the employer's business;

(B) had a substantial change in the type of business enterprise in which the employer is engaged;

(C) implemented a safety and accident prevention program approved by the health and safety division; or

(D) had excess losses resulting from a single incident involving multiple claims.

The Texas Insurance Code provided that an employer "aggrieved by an act or decision of the facility may appeal to the board no later than the 30th day after the affected party had actual notice that the act occurred or the decision was made." TEX. INS.CODE ANN. art. 5.76–2, § 2.08.

Here, the record reflects that Northwinds petitioned the Texas Department of Insurance to adjust its EMR. In fact, a letter written by Nancy Moore, Deputy Commissioner of the Workers' Compensation Division, dated October 10, 1994, indicates that the Department of Insurance twice altered Northwinds' EMR:

Attached hereto please find a copy of revised experience modifiers effective April 14, 1993 and April 14, 1994 for the two (2) policies shown above. These two (2) experience modifiers have been revised by the Staff again after reviewing the Decision and Order from the Texas Workers' Compensation Commission concerning the claim involving Emigdio Perez.

The Decision part of the Commission order under Docket No. HO/92–009051/01–CC–HO41 indicates that the employer unreasonably delayed in bringing its action and therefore the Commission dismissed its proceeding, even though the employer showed that Mr. Perez did not suffer an injury during the course and scope of his employment of October 2, 1991, while working for Northwinds Abatement, Inc. Then the Order rules that "because the carrier accepted liability for the claim, and has paid all income benefits that are apparently due, Mr. Perez remains eligible for medical benefits under the Act."

Therefore, I believe that the Staff was in error in revising the experience modifiers effective April 14, 1993 and April 14, 1994, to exclude the claim for Mr. Perez from the calculation. Please issue the necessary endorsements and adjust the premium accordingly to amend the experience modifier to 1.19 effective April 14, 1993 and 1.08 effective April 14, 1994.

Further proceedings were preempted, however, when the Facility filed suit against Northwinds in the 53rd Judicial District Court of Travis County, Texas. The parties settled that action on November 16, 1995. The settlement agreement provides, in part:

[The Facility and Northwinds] hereby agree and covenant not to sue, institute, commence or file any suit, administrative proceeding, demand, claim or cause of action for any claim which was or could have been asserted in the above referenced action provided, however, that nothing herein shall limit any party to this Agreement from instituting a suit based upon breach of this Agreement.

The Facility and Northwinds also agreed to "take no action to hinder, delay, frustrate or avoid consummation of the settlement and transaction" contemplated by the settlement agreement. Thus, under ·the settlement agreement, any further review of the EMR issue was barred. Hence, the Facility also decided to "hang up" on Northwinds, after placing its own call, and then blocked any future calls from Northwinds.

██ Precluded from ˙pursuing further review, Northwinds has exhausted its ability to seek additional findings regarding its EMR. Yet, even if the agreement permitted further review, that review would be time-barred under the 30–day limitation provision of the Texas Insurance Code. *See* Tex.Ins.Code Ann. art. 5.76–2, § 2.08. Thus, under the circumstances, administrative and judicial review of the EMR issue is complete. *See Hall,* 105 F.3d at 232; *Gardner,* 958 F.2d at 111–12; *Penny,* 906 F.2d at 188; *Dunn McCampbell Royalty Interest, Inc.,* 964 F.Supp. at 1131.

III. *Conclusion*

As described above, Northwinds has sufficiently complied with the Fifth Circuit's directive and this court's orders with respect to state administrative and judicial review concerning the issues of compensability, fraud, and the EMR. Northwinds may proceed to trial as previously scheduled for February 7, 1999, on its claims of fraudulent and bad faith settlement practices, negligence, negligence *per se,* gross negligence, deceptive trade practices, violations of the Texas Insurance Code, and breach of contract. With respect to Northwinds' claim for breach of the duty of good faith and fair dealing, the Fifth Circuit upheld this court's prior summary judgment on that issue, reasoning that Wausau was not Northwinds' insurer and, hence, owed it no duty of good faith and fair dealing. *See Northwinds Abatement, Inc.,* 69 F.3d at 1311–12; *see also Storebrand Ins. Co., U.K., Ltd.,* 139 F.3d at 1055; *Golden,* 981 F.Supp. at 475–76. Therefore,

that claim cannot now be revived in the absence of a change in controlling law.

Accordingly, Northwinds' Motion for Ruling on Completion of State Court Review is GRANTED, rendering its Motion for Partial Summary Judgment MOOT.

IT IS SO ORDERED.